Mora, Recurrente, *v.* El Registrador de Mayagüez, Recurrido.

Recurso gubernativo contra nota del Registrador de la Propiedad de Mayagüez denegando la inscripción de una cancelación de hipoteca.

No. 582.—Resuelto en febrero 18, 1923.

Hipotecas—Cancelación—Mención de Gravamen.—Vendida una finca quedando hipotecada para responder del precio aplazado e inscrita la venta y mencionada en la inscripción la hipoteca, tiene ésta el carácter de primera con respecto a otra hipoteca constituída luego por el comprador, aunque la se-

gunda quede inscrita con anterioridad en el registro, y si se ejecuta la finca en cobro en la primera hipoteca, con notificación del segundo acreedor hipotecario, y el precio obtenido sólo alcanza para satisfacer el primer gravamen, procede decretar e inscribir la cancelación del segundo.

Los hechos están expresados en la opinión.

Abogado del recurrente: *Sr. J. Sabater.*

El registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

Dueño José Mora de una casa en Mayagüez, la vendió a Luis Perocier el 3 de julio de 1920 por seis mil quinientos dólares, de los cuales pagó el comprador de contado quinientos y se comprometió a satisfacer los seis mil restantes en el plazo de seis años, a razón de mil cada año. En la misma escritura de venta se constituyó hipoteca sobre la casa vendida para garantizar el precio aplazado, y presentada dicha escritura en el registro, el registrador, el 5 de agosto de 1922, inscribió la finca a favor del comprador, y como no se solicitara la inscripción independiente del gravamen, se limitó de acuerdo con la ley, a hacer constar lo que sigue: "quedando hipotecada esta finca en garantía del precio aplazado."

El comprador Perocier hipotecó la finca comprada a Sucesores de Esmoris y Compañía en garantía de cinco mil dólares. El cinco de agosto de 1922, se inscribió la escritura de hipoteca en el registro y el registrador hizo constar en la inscripción lo que sigue: "Se halla afecta a la mención de hipoteca que resulta de la inscripción duodécima precedente."

En 18 de agosto de 1922 el registrador inscribió separadamente a favor de Mora la hipoteca constituída en la escritura de venta de 3 de julio de 1920, inscrita en el registro en cuanto a la venta el 5 de agosto de 1922.

No habiendo satisfecho Perocier el precio aplazado, Mora cobró la deuda ejecutando la hipoteca por el procedimiento sumarísimo hipotecario, notificándose a Sucesores de Esmo-

ris y Compañía y vendiéndose finalmente la finca en pú-
blica subasta el 7 de enero de 1924. La adquirió el propio
Mora por la suma de dos mil dólares que fué la mejor pos-
tura que se hizo.

Así las cosas, a petición del adquirente Mora la Corte de
Distrito de Mayagüez dictó una orden que, entre otros, con-
tiene el siguiente pronunciamiento: "y así mismo se ordena,
que la hipoteca posterior que aparece a favor de Sucesores
de Esmoris y Cía., Departamento de Maderas, sea también
totalmente cancelada en el Registro de la Propiedad de Ma-
yagüez; . . . . librándose para ello por el Secretario de esta
corte mandamiento por duplicado al Registrador de la Pro-
piedad de Mayagüez, con las inserciones necesarias." El
mandamiento fué librado y el registrador denegó la cance-
lación de la hipoteca "por cuanto la misma no fué inscrita
posteriormente, sino con anterioridad a la inscripción de la
hipoteca ejecutada del Sr. Mora, sin que se haya seguido
el procedimiento de ley." Y contra esa negativa es que se
ha interpuesto el presente recurso gubernativo.

El artículo 125 de la Ley Hipotecaria copiado, en lo per-
tinente, dice:

"En los casos de que sobre una o varias fincas graviten créditos
hipotecarios de varios acreedores y lleguen a venderse o adjudi-
carse para el pago al primer acreedor, en términos de que el valor
de lo vendido o adjudicado o no iguale o no supere al crédito hi-
potecario que se realice, los créditos restantes se entenderán de he-
cho y de derecho cancelados, y se cancelarán en el Registro, pre-
via presentación del oportuno mandamiento judicial en que cons-
ten la venta o la adjudicación y sus causas, con expresión del acto
que constituya la solvencia del crédito preferido, todas las ins-
cripciones posteriores de censos e hipotecas y las anotaciones de
embargo hechas también con posterioridad, dejando libres de todo
gravamen por estos conceptos la finca o fincas enajenadas o ad-
judicadas.

"Esto se entenderá sin perjuicio de los demás derechos y ac-
ciones que los acreedores postergados puedan ejercitar contra su
deudor conforme a las leyes."

El registrador sostiene que no procede la cancelación porque aunque la hipoteca de Esmoris se constituyó después que la de Mora, es lo cierto que se inscribió antes de que la de Mora lo fuera separadamente y por lo tanto no puede estimarse como un gravamen posterior que deba cancelarse de acuerdo con lo dispuesto por el artículo 125 de la Ley Hipotecaria que dejamos transcrito.

Sirven, sin duda alguna, de apoyo al criterio sustentado por el registrador el artículo 1776 del Código Civil revisado, y la opinión del comentarista Morell.

El artículo 1776, en lo pertinente, dice: "Además de los requisitos exigidos en el artículo 1758, es indispensable, para que la hipoteca quede válidamente constituída, que el documento en que se constituya sea inscrito en el registro de la propiedad." Y Morell se expresa como sigue:

"Es más: para la validez de la hipoteca como derecho real, exige el artículo 1875 del Código Civil su inscripción en el Registro. Luego, aunque en la escritura se expresase la prelación de una hipoteca anterior no inscrita, tal prelación no existiría al no consentirlo el segundo acreedor hipotecario que inscribiese primero, y aún puede sostenerse que, mencionada aquella hipoteca en esta inscripción, tampoco tiene preferencia, porque al no estar inscrita sólo se menciona un derecho personal." 3 Morell, Legislación Hipotecaria, 645.

"El artículo 29 se refiere al dominio y a los derechos reales, en general. ¿Puede aplicarse a la hipoteca? Para que la hipoteca quede válidamente constituída, requiere el artículo 1875 del Código Civil y el 146 de la Ley Hipotecaria que se haya *inscrito* en el registro de la propiedad. Mencionada solamente la hipoteca, ¿quedará válidamente constituída? ¿Perjudicará a tercero? Entendemos que no; que se requiere inscripción especial, y que en ese sentido ha debido reformarse el precepto del artículo 29." 2 Morell, Legislación Hipotecaria, 579.

Estaríamos enteramente conformes con el registrador, si no existiera el precepto de la Ley Hipotecaria que Morell

opina que ha debido reformarse. Es el artículo 29, que dice:

"Art. 29.—El dominio o cualquier otro derecho real que se mencione expresamente en las inscripciones o anotaciones preventivas, aunque no esté consignado en el registro por medio de una inscripción separada y especial, surtirá efecto contra tercero desde la fecha del asiento de presentación del título respectivo.

"Lo dispuesto en el párrafo anterior se entenderá sin perjuicio de la obligación de inscribir especialmente los referidos derechos, y de la responsabilidad en que pueda incurrir la persona que en casos determinados deba pedir la inscripción." Ley Hipotecaria, Comp. 1911, pág. 1120.

Las palabras "cualquier otro derecho real que se mencione expresamente" usadas por el legislador, comprenden la hipoteca. Una cosa es que la hipoteca no quede válidamente constituída, como en efecto no queda por su sola mención en el registro, y otra que la mención deje de perjudicar a tercero. El segundo párrafo no puede interpretarse en el sentido de anular el primero. Ambos pueden tener y tienen vida por sí mismos y se complementan. Hubiera sido por ejemplo imposible ejecutar la hipoteca sin inscribirla separadamente, pero mencionada en la forma tan clara y precisa que lo hizo el registrador, no puede el posterior contratante alegar ignorancia.

Comentando el artículo 29 de la Ley Hipotecaria, dice Galindo:

"Sabido es que la publicidad es una de las bases de la ley, desarrollada en los artículos 23, 24 y 25, declarantes de que sólo los títulos inscritos surten efecto contra tercero que no haya registrado su derecho. Aunque lógico parece que cada derecho real conste en inscripción separada, no olvidó el legislador la frecuencia con que en algunos títulos se mencionan o se reservan otros derechos, que se deben hacer constar en la inscripción relativa al acto o contrato que pudiéramos llamar principal; y teniendo presente aquella base, se redactó el artículo 29. En virtud de lo en él

dispuesto, si, por ejemplo, en una escritura de venta a plazos se asegura el pago de éstos con hipoteca de la misma finca, se deberá mencionar en la inscripción de venta, y aunque el vendedor no solicite que separada y especialmente se inscriba su derecho de hipoteca, basta que se halle mencionada para que surta sus efectos contra tercero. (V. S. de 22 Mayo 1889.) La razón es obvia: la persona que desee contratar sobre esa finca puede acudir al registro, y como en él aparecerá el gravamen, no puede alegar ignorancia, aunque no se halle especialmente inscrito.'' 2 Galindo y Escosura, Legislación Hipotecaria, 317.

Y glosando el 17 de la misma ley expresa:

''También, atendida la materialidad de las palabras del artículo 17, puede considerarse excepción, la inscripción de hipotecas o censos constituídos y no inscritos antes de inscribirse en el registro el título traslativo de dominio de la finca a que afecten, si en él se hizo mención de esas cargas.

''Si hubiera de entenderse literalmente el artículo 17, no se podrían inscribir tales hipotecas o censos, no obstante haberse mencionado en la inscripción del título traslativo de dominio; pero teniendo en cuenta que el vendedor, obrando con la debida buena fe, hizo constar la existencia de la hipoteca o del censo, y que el registrador, cumpliendo con lo preceptuado en el artículo 29 de la Ley, hizo mención de tales cargas, incluyéndolas en el párrafo correspondiente de la inscripción, creemos que si después de extendida ésta solicitara el acreedor hipotecario o el censualista que se incribiese su título, se habría de acceder a ello, no obstante ser de fecha anterior al título inscrito. El objeto del artículo 17 es impedir que se perjudique al que oportunamente inscribió, y como en el caso propuesto no hay perjuicio, porque con arreglo al artículo 29 de la Ley, el dominio o cualquier otro derecho real mencionado expresamente en una inscripción, surte su efecto contra tercero, y con más razón contra el que fué parte en el acto o contrato inscrito, sin que se exima por ello de la obligación de inscribir especialmente el referido derecho, no debe impedirse al acreedor que lo inscriba cuando quiera. (V. Res. de 27 Jul. 1899.)'' 1 Galindo y Escosura, Legislación Hipotecaria, 652.

Las anteriores citas de Galindo fueron hechas con aprobación en el caso de *Bello et al.* v. *Registrador de Arecibo,*

31 D. P. R. 118, en el que se decidió una cuestión que guarda relación estrecha con la envuelta en este recurso.

Una vez que la hipoteca quedó separadamente inscrita, no existiendo duda sobre su fecha por constar en documento público y habiendo sido mencionada con anterioridad en el registro, la conclusión a que llegara la corte de distrito en el sentido de que la hipoteca de Esmoris era posterior y podía y debía ordenarse su cancelación, está justificada por los hechos y la ley.

Debe, en tal virtud, declararse con lugar el recurso, revocarse la nota recurrida y ordenarse al registrador que proceda a cumplir el mandato de la corte de distrito.

Parece conveniente repetir aquí lo que dijimos en el caso de *Bello, supra,* a saber: que esta decisión queda limitada a los fines del registro. Si Esmoris se considera perjudicado, puede ventilar en el juicio que proceda su derecho y si demuestra que le asiste, le será reconocido.

*Revocada la nota recurrida.*

Jueces concurrentes: Sres Asociados Wolf, Aldrey, Hutchison y Franco Soto.