AMÉRICO VÁZQUEZ SANTIAGO, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD, SECCIÓN TERCERA DE SAN JUAN, recurrido.

*Número:* RG-90-110          *Resuelto:* 4 de noviembre de 1994

*José T. Marrero Rivera*, abogado de la parte recurrente; *Wilfredo Muñoz Román*, Registrador de la Propiedad, recurrido.

---

# SENTENCIA

## I

La recurrente —América Vázquez Santiago— acude ante nos debido a la calificación final emitida por el Registrador de la Propiedad de San Juan, Sección Tercera, que denegó la inscripción de una hipoteca unilateral constituida a su favor, por razón de que la finca gravada por la hipoteca no aparece inscrita a favor de los deudores hipotecarios.

Por los fundamentos expuestos más adelante, se confirma la calificación recurrida.

## II

Mediante la Escritura pública Núm. 103 otorgada el 13 de julio de 1964 ante el notario Víctor Rivera Colón, el señor Rodríguez Hernández y su esposa vendieron a los esposos León Flores y Rodríguez Beltrán una casa localizada en la urbanización Caparra Terrace por la cantidad de trece mil dólares ($13,000), que —según lo consignado en la escritura— fueron entregados con antelación a la fecha de su otorgamiento.

Los compradores eran la hija y el yerno, respectivamente, del vendedor, señor Rodríguez Hernández.

En el inciso (4) de la Escritura Núm. 103 los compradores reconocieron que adeudaban la cantidad total de doce mil dólares ($12,000), por lo cual constituyeron en la misma escritura dos (2) hipotecas por seis mil dólares ($6,000). Una de éstas se constituyó a favor del Sr. Cándido Rodríguez Beltrán, hijo del vendedor Rodríguez Hernández, y la otra a favor de la nieta de este último, la recurrente ante nos América Vázquez Santiago, quien a la fe-

cha cuando se otorgó la escritura era menor de edad.(¹) Los acreedores hipotecarios no comparecieron al otorgamiento de la escritura.

Los compradores y deudores hipotecarios estaban obligardos a pagar a los acreedores hipotecarios la totalidad adeudada en un término de tres (3) años, que venció el 13 de julio de 1967 sin que se efectuara pago alguno. No fue hasta casi ocho (8) años después de haberse otorgado la Escritura Núm. 103, que los esposos León-Rodríguez (compradores y deudores en la Escritura Núm. 103) cedieron la propiedad mencionada al Sr. Cándido Rodríguez Beltrán en pago de los seis mil dólares ($6,000) garantizados con la hipoteca.(²)

La dación en pago se efectuó mediante la Escritura pública Núm. 60 otorgada el 13 de mayo de 1972 ante el notario Víctor Rivera Colón.(³) En ésta, los otorgantes consignaron reconocer que la propiedad estaba gravada por dos (2) hipotecas; una a favor del cesionario, la cual sería cancelada en función de la dación en pago, y otra a favor de la recurrente, la cual según consta en la escritura fue asumida por el cesionario.(⁴)

Las escrituras en cuestión fueron presentadas ante el Registro de la Propiedad años después de haberse otorgado. En específico, la Escritura de compraventa e hipoteca Núm. 103 se presentó ante el Registro de Propiedad el 5 de junio de 1973; es decir, luego de transcurrir nueve (9) años de su otorgamiento. Con la escritura, se presentaron los aranceles siguientes:

---

(¹) En específico, según consta en la escritura, a la fecha del otorgamiento la recurrente contaba con quince (15) años de edad.

(²) El acreedor hipotecario y cesionario, Cándido Rodríguez Beltrán compareció a la escritura de dación en pago y asunción de la hipoteca, representado por su padre y mandatario, Cándido Rodríguez Hernández, quien a su vez compareció como vendedor en la Escritura Núm. 103.

(³) Este último fue el mismo notario ante quien se otorgó la Escritura Núm. 103.

(⁴) La recurrente no fue notificada de la dación en pago y asunción de la hipoteca, de modo que como acreedora no consintió a la sustitución de su primitivo deudor, por lo que éste no queda liberado. *Teachers Annuity v. Soc. de Gananciales*, 115 D.P.R. 277 (1984).

1. Un comprobante por los derechos de inscripción de trece dólares ($13), por el concepto de la compraventa, y otro de seis dólares ($6), por una hipoteca de seis mil dólares ($6,000).

2. Un comprobante de un dólar ($1) por los derechos de presentación.

3. Un sello de Rentas Internas de cincuenta centavos ($0.50).

Finalmente, el 16 de agosto de 1973 se inscribió la Escritura Núm. 103 quedando como titulares registrales del inmueble los esposos León-Rodríguez. No obstante, al aparecer dos (2) hipotecas en la escritura, *tan sólo se inscribió la hipoteca a favor de Cándido Rodríguez Beltrán*, la hipoteca a favor de la recurrente *quedó fuera del Registro de la Propiedad*. A este respecto, alega el Registrador que no se presentaron los derechos de inscripción correspondientes a esta última. Añade que del Diario de Operaciones "se desprende claramente" que la intención de los presentantes de la Escritura Núm. 103 fue "limitar el asiento de presentación a la inscripción de la hipoteca a favor de Cándido Rodr[í]guez Beltrán y la [c]ompraventa a favor de Fernando León Flores y Gladys Irma Rodríguez". Alegato del recurrido, pág. 4.

Por su parte, la Escritura Núm. 60 de dación en pago y asunción de la hipoteca fue presentada ante el Registro de la Propiedad el 7 de junio de 1973, es decir, dos (2) días después de que se presentara la Escritura Núm. 103. Como resultado de lo anterior, en la inscripción registral correspondiente se canceló la hipoteca constituida a favor del cesionario Rodríguez Beltrán y se inscribió la titularidad inmueble a su favor.

Así las cosas en abril de 1989, prácticamente dieciséis (16) años después de haberse inscrito el inmueble a favor de Cándido Rodríguez Beltrán,[5] la recurrente presentó

---

[5] En este extremo, la recurrente alega que no fue hasta 1989 cuando advino en conocimiento sobre la dación en pago y asunción de la hipoteca efectuada en 1972 a

una copia de la Escritura Núm. 103 para que se inscribiese a su favor la acreencia hipotecaria consignada en ésta. La inscripción que solicitó fue denegada.

El Registrador de la Propiedad consignó lo siguiente:

> La finca consta inscrita a favor de Cándido Rodríguez Beltrán por donación [sic] en pago, por lo que no se puede inscribir la hipoteca por la finca no pertenecer a los deudores del documento de epígrafe, por lo que falta previa. Art. 57, Ley 198. *Exhibit* II.

En tiempo, la señora Vázquez Santiago presentó su solicitud de recalificación al Registrador de la Propiedad, quien denegó tal solicitud por los mismos fundamentos antes expuestos, para tomar en su lugar una anotación preventiva por el término de sesenta (60) días.

Es debido a esta denegatoria que la recurrente acude ante nos. Objeta la calificación final emitida por el Registrador de la Propiedad "por ésta ser contraria al principio del tercero registral altamente conocido en nuestro sistema de derecho hipotecario y a lo dispuesto en el mismo artículo 57 de la Ley [Núm.] 198 [de 8 de agosto] de 1979 (Ley Hipotecaria de Puerto Rico)". Petición, pág. 4.

### III

Nos corresponde determinar si procedía la inscripción solicitada por la recurrente. Concluimos que no. Veamos.

La hipoteca es un derecho real de garantía que se caracteriza por su accesoriedad y función aseguradora de una percepción dineraria. Para que la hipoteca quede constituida con validez, se requiere que se haya acordado en una escritura pública y conste inscrita en el Registro de la Propiedad. *La inscripción registral de la hipoteca repre-*

---

favor de Rodríguez Beltrán y que en virtud de ello realizó gestiones de cobro ante su nuevo deudor, Rodríguez Beltrán, las cuales resultaron infructuosas. Que posteriormente, al percatarse de que Rodríguez Beltrán se proponía vender el inmueble a un tercero, la recurrente gestionó la inscripción de su acreencia hipotecaria, y a estos fines presentó ante el Registro de la Propiedad la Escritura Núm. 103.

*senta el acto constitutivo* mediante el cual la garantía, que la hipoteca representa, produce efectos reales y adviene eficaz *erga omnes.* Art. 188 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2607; *Trabal Morales v. Ruiz Rodríguez,* 125 D.P.R. 340 (1990); *Rosario Pérez v. Registrador* 115 D.P.R. 491 (1984); J. Puig Brutau, *Fundamentos de Derecho Civil,* 3ra ed., Barcelona, Ed. Bosch, 1983, Vol. III, T. III, pág. 55 *et seq.*

Por su origen, se distingue entre las hipotecas voluntarias y legales. Los hipotecas voluntarias son las convenidas entre las partes; es decir, las hipotecas resultantes de un negocio jurídico bilateral, o las impuestas por disposición del dueño de los bienes, resultantes de un negocio jurídico unilateral. Art. 182 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2601; Puig Brutau, *op cit.* La hipoteca unilateral es fruto de la exclusiva decisión y disposición del propietario de la cosa gravada, quien puede inscribirla en el Registro de la Propiedad sin que sea necesario que conste la aceptación del acreedor hipotecario. La hipoteca unilateral se constituye desde el momento mismo *de la inscripción.* La aceptación por parte del acreedor es requerida para la efectividad y el desenvolvimiento del acto jurídico de modo que el acreedor pueda adquirir el derecho. Ahora bien, es indispensable *que se inscriba* la hipoteca para que la aceptación posterior pueda ocurrir. R.M. Roca Sastre, *Derecho Hipotecario,* 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV-2, pág. 686.

Para que un título o documento constitutivo de un derecho real tenga acceso al Registro de la Propiedad, es necesario que el derecho del transmitente conste previamente inscrito. A este respecto, el Art. 57 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2260, dispone que:

> Para registrar documentos por los que se declaren, trasmitan, graven, modifiquen, o extingan el dominio y demás derechos reales sobre bienes inmuebles, deberá constar previa-

mente registrado el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos.

El artículo citado recoge el llamado "principio de tracto sucesivo o de continuidad registral que tiene por objeto mantener el enlace o conexión de las adquisiciones por el orden regular de los titulares registrales sucesivos, a base de formar todos los actos adquisitivos inscritos una continuidad perfecta en orden al tiempo, sin salto alguno, de suerte que ello refleje el historial sucesivo de cada finca inmatriculada", de modo que el transferente de un derecho real hoy sea el adquirente de ayer y que el titular registral actual sea el transferente de mañana. (Énfasis suprimido.) Roca Sastre, *op. cit.*, T. II, págs. 327.

Según lo antes descrito, el "principio de tracto sucesivo es un principio de orden ... a través del cual giran los demás principios hipotecarios, y señaladamente los de fe pública y de legitimación registral". Roca Sastre, *op. cit.*, pág. 328.

Por disposición expresa del Art. 57 de la Ley Hipotecaria y de Registro de la Propiedad, *supra*, cuando un título presentado para su inscripción no cumpla con el tracto sucesivo, se denegará la inscripción solicitada.

En el caso ante nos, cuando la recurrente Vázquez Santiago presentó la escritura de hipoteca para su inscripción ante el Registro de la Propiedad, el inmueble que había de ser gravado por ésta ya *constaba inscrito a favor de una persona distinta a la de su acreedor hipotecario.* En específico, según surge de la Escritura Núm. 103 sobre compraventa e hipoteca presentada por la recurrente, los titulares del inmueble y deudores hipotecarios eran el señor León Flores y su esposa. La escritura mencionada se presentó para su inscripción cuando el inmueble que había de ser gravado constaba inscrito a favor de Cándido Rodríguez Beltrán; faltaba por lo tanto el tracto o la inscripción previa a favor del transmitente del derecho. Procedía, como en efecto se hizo, denegar la inscripción solicitada.

La hipoteca unilateral a favor de la recurrente no se constituyó pues no se inscribió, por lo que ésta nunca estuvo en posición de aceptarla. Los deudores de la recurrente expresaron la voluntad de constituir una hipoteca unilateral a su favor mas no cumplieron con todos los requisitos para así hacerlo. Al no inscribirse la escritura de hipoteca en el Registro de la Propiedad, nunca se constituyó como derecho real. Su reclamación frente a los deudores es de carácter personal.(6)

Por los fundamentos antes expuestos, *se confirma la calificación recurrida.*

Así lo pronunció y manda el Tribunal, y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López no intervino. La Juez Asociada Señora Naveira de Rodón concurrió con opinión escrita.

— O —

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón.

La recurrente objeta la calificación final emitida por el Registrador de la Propiedad de San Juan, Sección Tercera. Debemos, pues, estudiar si puede inscribirse la hipoteca unilateral a favor de la recurrente y si el Registrador de la Propiedad actuó correctamente al denegar dicha inscripción.

---

(6) El hecho de que a la fecha de otorgarse la Escritura Núm. 103 la recurrente era menor de edad, no afecta el resultado al cual llegamos. Al no haber inscrito la hipoteca, la recurrente nunca estuvo en posición de aceptarla. Al momento cuando se presentó la hipoteca para su inscripción, *ésta ya había llegado a la mayoría de edad.* Tenía la capacidad para hacer constar su derecho hipotecario y no lo hizo.

Como dicho contrato quedó inscrito en el Registro de la Propiedad desde 1973, se le imputa desde entonces, por ficción legal, el conocimiento de la constancia registral. *García Larrinua v. Lichtig*, 118 D.P.R. 120, 137 (1986).

I

*Exposición de los hechos*

En 1964, el Sr. Cándido Rodríguez Hernández, abuelo de la aquí recurrente quien para ese entonces era menor de edad, y su esposa Eulogia Figueroa otorgaron una escritura de compraventa ante el notario Víctor Rivera Colón en favor de los esposos Gladys Irma Rodríguez Beltrán y Fernando León Flores. Los compradores eran la hija y el yerno, respectivamente, del señor Rodríguez Hernández. Mediante la escritura referida se vendió una casa en la urbanización Caparra Terrace por el precio de trece mil dólares ($13,000), suma que los vendedores dijeron haber recibido de los compradores antes del acto celebrado ante notario.

En la misma Escritura Núm. 103 de 13 de julio de 1964, los nuevos adquirentes reconocieron adeudar un total de doce mil dólares ($12,000) a dos (2) personas, por lo cual constituyeron sendas hipotecas por la suma de seis mil dólares ($6,000) cada una, a favor de Cándido Rodríguez Beltrán y la recurrente América Vázquez Santiago, hijo y nieta, respectivamente, del vendedor.

Quinto: En garantía del pago a don Cándido Rodríguez Beltrán de dicha suma de seis mil dollares [sic] en la fecha fijada, los esposos aquí deudores constituyen hipoteca a favor de dicho acreedor sobre el inmueble antes descrito, fij[á]ndose como valor de dicho inmueble caso de ejecución por la v[í]a sumaria la suma de seis mil dollares [sic], y para costas y honorarios la suma de Quinientos dollares [sic].

Sexto: Asimismo en garant[í]a del pago a América Vázquez Santiago de dicha suma adeudada de seis mil dollares [sic] en la fecha antes fijada, los esposos aquí deudores constituyen hipoteca a favor de dicha acreedora sobre el inmueble antes descrito, fij[á]ndose como valor de dicho inmueble caso de ejecución por la vis [sic] sumaria la suma de seis mil dollares [sic], y para costas y honorarios caso de ejecución se fija la suma de Quinientos dollares [sic].

Los adquirentes y deudores hipotecarios se obligaron a pa-

gar a sus dos (2) acreedores hipotecarios dichas sumas, sin intereses, en un plazo de tres (3) años que vencía el 13 de julio de 1967.([1]) Ninguno de los dos (2) acreedores compareció al acto de otorgamiento de la Escritura Núm. 103.

A pesar de haber pactado que pagarían en un plazo de tres (3) años, transcurrieron casi ocho (8) años sin que los deudores saldaran las sumas adeudadas. Así las cosas, el 13 de mayo de 1972 y por la Escritura Núm. 60 ante el mismo notario Víctor Rivera Colón, los esposos Gladys Irma Rodríguez Beltrán y Fernando León Flores dieron en pago a uno de los acreedores hipotecarios, Cándido Rodríguez Beltrán, la propiedad que habían adquirido en 1964. El acreedor cesionario compareció representado por su progenitor y mandatario verbal Cándido Rodríguez Hernández. En el segundo párrafo de la escritura se reconoce que la propiedad estaba afecta a dos (2) hipotecas, una a favor del cesionario y otra a favor de la aquí recurrente. En el tercer párrafo, los comparecientes convinieron la cesión del inmueble en pago de una de las hipotecas por seis mil dólares ($6,000),

> ... y en tal virtud dichos esposos Fernando León Flores y doña Gladys Irma Rodríguez ceden y dan a don Cándido Rodríguez Beltrán, quien lo acepta por su mandatario verbal el compareciente don Cándido Rodríguez Hernández, el antes descrito inmueble y en pago de la hipoteca mencionada de seis mil dollares [sic], *asumiendo la parte aquí cesionaria don Cándido Rodríguez Beltrán la hipoteca que grava el inmueble a favor de doña América Vázquea* [sic] *Santiago.* Y en virtud de dicha dación en pago queda cancelada la hipoteca a favor del adquirente del inmueble don Cándido Rodríguez Beltrán. (Énfasis suplido.)

Cabe señalar que a la recurrente no se le notificó de esta dación en pago y que, por consiguiente, no consintió como acreedora a la sustitución de su primitivo deudor.

---

([1]) La Escritura Núm. 103, firmada únicamente por los cuatro (4) comparecientes, fue presentada al Registro de la Propiedad en 1973, es decir, nueve (9) años después de haberse otorgado ante el notario.

A pesar de haber sido otorgada en 1964, la Escritura Núm. 103 sobre compraventa e hipoteca no se presentó ante el Registro de la Propiedad sino hasta el 5 de junio de 1973, es decir, nueve (9) años después de haberse celebrado el acto ante el notario y habiendo ya transcurrido un (1) año luego de otorgada la Escritura Núm. 60 de 1972 sobre dación en pago y asunción de hipoteca. Del Diario de Operaciones tan sólo surgen los pagos correspondientes a los aranceles siguientes: un comprobante por derechos de inscripción de trece dólares ($13) por el concepto de la compraventa y otro de seis dólares ($6) por el concepto de una hipoteca por seis mil dólares ($6,000); un comprobante por derechos de presentación de un dólar ($1) y un Sello de Rentas Internas de cincuenta centavos ($0.50) por razón del Código Político.

La referida Escritura Núm. 103 de 1964 fue inscrita por el Registrador de la Propiedad el 16 de agosto de 1973. Ésta es la tercera inscripción. Se inscribió la titularidad del inmueble a favor de los esposos compradores y, a pesar de que aparecían dos (2) hipotecas en la escritura, sólo una de éstas se inscribió, la hipoteca a favor de Cándido Rodríguez Beltrán por seis mil dólares ($6,000). Se dejó fuera del Registro de la Propiedad la hipoteca a favor de la menor América Vázquez Santiago.(²) En el Diario de Operaciones aparece, en el espacio provisto para anotar a favor de quién se ha de inscribir, que sería a favor de "Fernando León Flores la venta por $13.00 y a favor de Cándido Rodríguez Beltrán la hip. [sic] por $6.00".(³) No se inscribió la men-

---

(²) Según afirma en su escrito el Registrador de la Propiedad recurrido, no surge del Registro de la Propiedad que se inscribiera la hipoteca por seis mil dólares ($6,000) a favor de la menor de edad América Vázquez Santiago ni que se recibiera el pago por los derechos de inscripción de dicha hipoteca. El arancel para inscribir la hipoteca en aquel entonces era sólo seis dólares ($6), una cantidad ínfima.

(³) En ese sentido, el Registrador de la Propiedad recurrido afirma que del Diario de Operaciones "se desprende claramente que la intención al presentar el documento fue limitar el asiento de presentación a la inscripción de la hipoteca a favor de Cándido Rodríguez Beltrán y la Compraventa a favor de Fernando León Flores y Gladys Irma Rodríguez, dejando fuera la hipoteca a favor de la menor América Vázquez Santiago".

ción de la hipoteca establecida a favor de América Vázquez Santiago en la Escritura Núm. 103. Tampoco consta en la tercera inscripción que el Registrador de la Propiedad notificase al presentante el defecto de la falta de pago por concepto del arancel para poder inscribir la hipoteca a favor de la menor.

Dos (2) días después de haberse presentado la Escritura Núm. 103 sobre compraventa e hipoteca, el 7 de junio de 1973, se presentó para su inscripción, en el Registro de la Propiedad, la Escritura Núm. 60 de 1972 sobre dación en pago y asunción de hipoteca. En esta cuarta inscripción se hace referencia a la hipoteca a favor de la menor, la cual había sido asumida por Rodríguez Beltrán pero que no aparecía en la tercera inscripción. El Registrador de la Propiedad inscribió la titularidad de la finca, previa cancelación de la hipoteca constituida, a favor del cesionario Rodríguez Beltrán "con el defecto subsanable de no haberse suplido el contrato en forma legal" según la enmienda al acta de la cuarta inscripción hecha por el entonces Registrador de la Propiedad Jorge Sagardía el 20 de agosto de 1973.

La recurrente, menor de edad cuando se otorgó la Escritura Núm. 103, afirma desconocer las razones por las cuales no se inscribió su crédito. Aún más, dice que fue en 1989 cuando advino en conocimiento de la transacción de dación en pago y asunción de hipoteca efectuada en 1972 a favor de Rodríguez Beltrán. En razón de ello, hizo gestiones ante su deudor Rodríguez Beltrán, pero dichas gestiones resultaron infructuosas. Más tarde, al enterarse que Rodríguez Beltrán se proponía enajenar la propiedad a una tercera persona, la recurrente presentó su hipoteca para ser inscrita en el Registro de la Propiedad.[4]

---

[4] La recurrente presentó copia de la Escritura Núm. 103 el 14 de abril de 1989 a las 9:25 de la mañana. La propiedad en cuestión fue vendida a Carmen Torres Ginés por la Escritura Núm. 25 de 13 de abril de 1989 ante el notario Víctor M. Rivera Torres, documento que fue presentado el mismo 14 de abril de 1989, pero a las 2:50 de la tarde. Debe señalarse que entre las advertencias en la Escritura Núm. 25

El Registrador de la Propiedad de San Juan, Sección Tercera, denegó la inscripción de la hipoteca con la nota siguiente:

> La finca consta inscrita a favor de Cándido Rodríguez Beltrán por donación [sic] en pago, por lo que no se puede inscribir la hipoteca por la finca no pertenecer a los deudores del documento de epígrafe, por lo que falta previa. Art. 57, Ley 198.

En tiempo, la señora Vázquez Santiago presentó su solicitud de recalificación al Registrador de la Propiedad, quien denegó tal solicitud por los mismos fundamentos antes expuestos, tomando en su lugar una anotación preventiva por el término de sesenta (60) días.

Es de esta denegatoria que la recurrente acude ante nos. Objeta la calificación final emitida por el Registrador de la Propiedad, según sus palabras, "por ésta ser contraria al principio del tercero registral altamente conocido en nuestro sistema de derecho hipotecario y a lo dispuesto en el mismo artículo 57 de la Ley [Núm.] 198 [de 8 de agosto] de 1979 (Ley Hipotecaria de Puerto Rico)".

## II

*El derecho real de hipoteca*

El Registro de la Propiedad publica el estado jurídico de los bienes inmuebles o derechos reales inscritos. Art. 23 de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979 (30 L.P.R.A. sec. 2101). Esta inscripción registral, aunque no da ni quita derechos, surtirá efecto en cuanto a terceros hasta tanto los tribunales declaren su nulidad. Arts. 53 y 64 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2256 y 2267.

---

está la siguiente: "el Notario le advierte a la compradora que, para proteger sus derechos, debe inscribir esta escritura con la mayor premura."

Si bien los derechos reales se constituyen, transmiten, modifican y extinguen con arreglo a las disposiciones del Código Civil y las demás leyes sustantivas aplicables, en nuestra jurisdicción se reconocen ciertas excepciones, tales como el derecho de hipoteca o aquel derecho sujeto a las disposiciones de la Ley de la Propiedad Horizontal. *Marín v. Montijo*, 109 D.P.R. 268, 272 (1979).

La hipoteca ha sido definida como

"... un derecho real perteneciente, en fuerza de la inscripción y desde el momento de ésta, al acreedor sobre los bienes inmuebles del deudor o de un tercero, en virtud de cuyo derecho, no obstante conservar el deudor o el tercero la posesión de la cosa hipotecada y la facultad de disponer de ella, el acreedor adquiere la facultad de perseguirla, cualquiera que sea la mano en que se encuentre, a fin de ser pagado con el precio de la misma, con la preferencia correspondiente al grado de su inscripción." (Escolio omitido.) R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV-1, págs. 204–205.

En síntesis, la hipoteca es un derecho real de garantía que funciona en seguridad de la efectividad de un crédito y podrá constituirse en garantía de toda clase de obligaciones. Roca Sastre, *op. cit.*, pág. 271; Art. 156 de la Ley Hipotecaria y Registro de la Propiedad, 30 L.P.R.A. sec. 2552.

La doctrina española reconoce, como elementos personales de la hipoteca, al acreedor hipotecario y al deudor hipotecante. El acreedor hipotecario es aquel que adquiere el derecho real una vez constituido, mientras que el deudor hipotecante es el dueño o titular del inmueble o derecho sobre el cual se constituye la hipoteca. "La hipoteca puede constituirse a favor de dos o más personas, en cuyo caso serán varios los acreedores investidos de la titularidad de dicho derecho real de hipoteca." (Escolio omitido.) Roca Sastre, *op. cit.*, T. IV-2, pág. 669.

El Código Civil establece que el contrato de hipoteca cumplirá con los siguientes requisitos esenciales: (1) que la

hipoteca se constituya para asegurar el cumplimiento de una obligación principal; (2) que la cosa hipotecada pertenezca en propiedad al que hipoteca, y (3) que las personas que constituyan la hipoteca tengan la libre disposición de sus bienes o, en caso de no tenerla, se hallen legalmente autorizadas al efecto. Art. 1756 (31 L.P.R.A. sec. 5001). Por su parte, la Ley Hipotecaria y del Registro de la Propiedad requiere, para que quede válidamente constituida una hipoteca voluntaria, que la misma se haya acordado en escritura pública y que dicha escritura se haya inscrito en el Registro de la Propiedad. Art. 188 (30 L.P.R.A. sec. 2607); *Martínez v. Colón Franco, Concepción*, 125 D.P.R. 15 (1989).

Por razón de su origen, las hipotecas son voluntarias o legales. La hipoteca legal es de establecimiento forzoso o impuesto por la ley.[5] Conforme al Art. 182 de la Ley Hipotecaria y del Registro de la Propiedad, "[s]on hipotecas voluntarias las convenidas entre partes o impuestas por disposición del dueño de los bienes o derechos sobre que se constituyan y únicamente podrán ser establecidas por quienes tengan la libre disposición de dichos bienes o derechos o, en caso de no tenerla se hallen autorizados para ello con arreglo a las leyes". 30 L.P.R.A. sec. 2601.

## La hipoteca unilateral

El Art. 182, *supra*, hace referencia a que la hipoteca voluntaria puede ser *convenida* entre partes, o sea, por ne-

---

[5] R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV-2, pág. 663. El Art. 200 de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, dispone:

"Se constituye hipoteca legal a favor del Estado Libre Asociado de Puerto Rico, del Centro de Recaudación de Ingresos Municipales del Estado Libre Asociado de Puerto y las correspondientes municipalidades, sobre los bienes inmuebles de los contribuyentes por el importe de las contribuciones territoriales de las cinco (5) últimas anualidades y las corrientes no pagadas de los impuestos que graviten sobre ellos. Esta hipoteca legal tiene carácter de tácita y determina una preferencia en beneficio de sus titulares sobre todo otro acreedor, y sobre el tercer adquirente, aunque se haya inscrito sus derechos." 30 L.P.R.A. sec. 2651, según enmendada por la Ley Núm. 83 de 30 de agosto de 1991.

gocio jurídico bilateral, y también puede ser *impuesta* por disposición del dueño, es decir, por negocio jurídico unilateral. El texto de este artículo es casi idéntico a los Arts. 138 y 139 de la anterior Ley Hipotecaria de 1893 (30 L.P.R.A. ants. secs. 251 y 252), derogada por la actual ley aprobada en 1979. A su vez, estos artículos son casi idénticos al Art. 138 de la Ley Hipotecaria que rige en España.

La figura de la hipoteca unilateral tuvo su origen en las necesidades prácticas de los negocios. Así surgieron "hipotecas ofrecidas por quien pretendiendo obtener crédito bancario, empezaba —a fin de favorecer el éxito de la operación— por constituir unilateralmente una hipoteca en garantía del potencial préstamo, hipoteca que aceptaría la entidad bancaria una vez cerrado con ella el correspondiente convenio". Roca Sastre, *op. cit.*, T. IV-2, pág. 679.

La hipoteca unilateral es "fruto de la exclusiva decisión y disposición del propietario de la cosa gravada". R. de Ángel Yagüez, *Manual de clases prácticas de Derecho Civil: (derechos reales)*, Bilbao, Pubs. U. Deusto, 1983, pág. 314. Véase J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, Madrid, Ed. Marcial Pons, 1982, T. II, pág. 782. En España, hasta la reforma hipotecaria de 1944–1946, la figura de la hipoteca unilateral fue objeto de acalorados desacuerdos entre los tratadistas en cuanto a su alcance y eficacia. A partir del Decreto de 8 de febrero de 1946, el Art. 141 de la Ley Hipotecaria de España establece el mecanismo para la aceptación de dicha hipoteca.[6] El Art. 186

---

[6] "En las hipotecas voluntarias constituidas por acto unilateral, del dueño de la finca hipotecada, la aceptación de la persona a cuyo favor se establecieron o inscribieron se hará constar en el Registro por nota marginal, cuyos efectos se retrotraerán a la fecha de la constitución de la misma.

"Si no constare la aceptación después de transcurridos dos meses, a contar desde el requerimiento que a dicho efecto se haya realizado, podrá cancelarse la hipoteca a petición del dueño de la finca, sin necesidad del consentimiento de la persona a cuyo favor se constituyó." Art. 141 de la *Ley Hipotecaria y su Reglamento*, Madrid, Ed. Tecnos, 1983, Tít. V, pág. 99.

El Art. 237 del Reglamento de la Ley Hipotecaria de España requiere el otorgamiento por el dueño de la finca de la correspondiente escritura cancelatoria para que el Registrador pueda practicar la cancelación. También exige que en el requeri-

de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, es casi idéntico al español, aunque el nuestro aclara que el requerimiento será mediante notario.

Bajo la derogada Ley Hipotecaria de 1893 (30 L.P.R.A. ant. sec. 1 *et seq.*) podían constituirse hipotecas unilaterales, pero la nueva Ley Hipotecaria y del Registro de la Propiedad las reglamenta expresamente:

> En las hipotecas voluntarias constituidas por acto unilateral del dueño de la finca o derecho hipotecado a favor de una persona determinada, la aceptación de ésta se hará constar en el Registro por nota cuyos efectos se retrotraerán a la fecha de la constitución de la misma.
>
> Si no constare la aceptación de la persona a cuyo favor se constituyó la hipoteca, transcurridos dos (2) meses a contar desde la fecha en que la misma le fuera requerida, mediante notario, podrá cancelarse dicha hipoteca a petición del dueño de la finca o derecho y en virtud de la correspondiente escritura de cancelación, sin necesidad del consentimiento de la expresa persona, a favor de quien se constituyó. Art. 186 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2605. Véase también el Art. 163.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-163.1, edición especial.

El hipotecante puede otorgar una escritura de hipoteca unilateral e inscribirla en el Registro de la Propiedad sin que conste la aceptación del acreedor hipotecario. Así ocurrió en *Santiago v. El Registrador de Guayama*, 25 D.P.R. 855 (1917). Allí los dueños de varias fincas constituyeron unas hipotecas voluntarias sobre las mismas para garantizar cierto préstamo. Los dueños de las fincas hipotecadas comparecieron personalmente al otorgamiento de la escritura, mientras que el acreedor hipotecario compareció por medio de apoderado. No se transcribió en la escritura el documento público del poder ni tampoco se acompañó éste cuando se presentó la escritura al Registro de la Propiedad. El Registrador de la Propiedad inscribió la es-

---

miento conste el plazo de dos (2) meses para la aceptación de la hipoteca, transcurridos los cuales podrá ser cancelada por el dueño de la finca.

critura de hipoteca con el defecto subsanable de no haberse acreditado el poder. Contra dicha calificación se interpuso un recurso gubernativo. Al revocar la determinación del Registrador, expresamos:

> "... según la doctrina del ... artículo 138 de la Ley Hipotecaria, las hipotecas voluntarias pueden constituirse válidamente, no sólo por convenio entre las partes, sino por la exclusiva voluntad del dueño de los bienes sobre que las mismas se constituyan, *sin necesidad de que conste la aceptación de las personas a cuyo favor se impone este gravamen*".

> . . . . . . . .

> ... Y en este caso que pende ante nosotros la escritura de hipoteca pudo otorgarse y hubiera sido inscribible *prescindiendo en absoluto del acreedor hipotecario*. (Énfasis suplido.) *Santiago v. El Registrador de Guayama*, supra, págs. 856–857. Véanse: *Pérez Blanco v. Registrador*, 37 D.P.R. 632 (1928); *Bello et al. v. El Registrador de Arecibo*, 31 D.P.R. 118 (1922).

La hipoteca unilateral queda válidamente constituida desde el mismo momento de su inscripción,[7] aun cuando no conste la aceptación. La aceptación posterior del derecho de hipoteca por parte del acreedor es a modo de *conditio iuris*[8] que complementa el acto constitutivo de la misma. Como ninguna persona puede ser forzada a aceptar una hipoteca contra su voluntad, la aceptación que hace el acreedor es un requisito para poder adquirir el derecho.[9]

---

[7] En el Registro de la Propiedad se inscriben, entre otros, los títulos, actos o contratos relativos a los derechos reales. Art. 38 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2201. La declaración unilateral de voluntad dirigida a la constitución de la hipoteca es un acto de esta clase. Roca Sastre, *op. cit.*, pág. 683.

[8] Según Roca Sastre, la *conditio iuris* es un requisito que no se refiere a la perfección del acto jurídico, sino a su efectividad y desenvolvimiento. Roca Sastre, *op. cit.*, pág. 686.

[9] "Evidentemente nadie en general puede ser forzado a admitir una hipoteca, como tampoco una donación, pero en estos actos, la ausencia de onerosidad por parte del adquirente hace que deba situarse en el acto unilateral del disponente casi toda la energía jurídica y elementos necesarios para su perfección, pues únicamente le falta la simple adhesión o conformidad del beneficiario, el cual, en rigor, sólo debe producirse manifestando su voluntad de aceptar el beneficio o rechazarlo. Esta aceptación simplemente, completa o acaba de perfeccionar el acto constitutivo de la hipoteca, provocando la adquisición. Por encontrarse dentro de aquel acto constitutivo el *substratum* del derecho real constituido, es lógico situar en el tiempo en que se

La hipoteca grava la finca durante el lapso de tiempo entre la inscripción de la hipoteca por acto unilateral del dueño y la inscripción de la escritura cancelatoria.([10]) Aparte del período prescriptivo de veinte (20) años, este gravamen subsistirá mientras el dueño no practique el requerimiento, transcurra el término reglamentario de dos (2) meses o el acreedor rechace el requerimiento, y se presente la escritura de cancelación. Según Rosa Sastre, si el acreedor contesta antes de que concluyan los dos (2) meses para rechazar la hipoteca a su favor no es necesario esperar los dos (2) meses completos para que el dueño presente la escritura cancelatoria al Registro de la Propiedad. Roca Sastre, *op. cit.*, págs. 695 y 699. La ley hipotecaria no requiere que la aceptación se haga en escritura pública. Una vez conste inscrita en el Registro de la Propiedad la aceptación del acreedor, el dueño de la finca no podrá cancelar la hipoteca unilateral.([11])

## *Dos (2) hipotecas unilaterales en una escritura*

El hipotecante puede establecer dos (2) o más hipotecas sobre una finca o derecho. Si esas hipotecas son unilaterales y se constituyen en una misma escritura, salvo pacto en contrario, ninguna de ellas tendrá preferencia sobre las otras y gozarán de igual rango.([12]) Art. 178 de la Ley Hipo-

---

produjo la disposición unilateral del propietario momento del nacimiento de dicho derecho, siendo indiferente, en principio, que la aceptación haya sido simultánea o posterior." Roca Sastre, *op. cit.*, pág. 685.

([10]) El gravamen de la finca también se cancela al inscribirse un negocio jurídico que tenga el efecto de reunir en la misma persona al acreedor hipotecario y al deudor hipotecario. *Trabal Morales v. Ruiz Rodríguez*, 125 D.P.R. 340 (1990). "[L]a hipoteca es accesoria a la obligación cuyo cumplimiento garantiza quedando extinguida cuando la obligación termina, entre otros supuestos, por la confusión producida por una dación en pago." E. Martínez Moya, *Derecho registral inmobiliario y derecho notarial*, 60 Rev. Jur. U.P.R. 865, esc. 1 (1991).

([11]) Los tratadistas señalan que si el acreedor hace constar su aceptación luego de transcurridos los dos (2) meses desde el requerimiento, pero antes de que el dueño de la finca presente escritura cancelatoria, no se podrá cancelar la hipoteca unilateral. Roca Sastre, *op. cit.*, pág. 699.

([12]) "Salvo pacto en contrario, siempre que el pago de un crédito asegurado con hipoteca se dividiere en varios plazos, incluso si han sido expedidos títulos endosa-

tecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2571; Art. 125 de la Ley Hipotecaria de 1893 (30 L.P.R.A. ant. sec. 221).

El Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad provee para la situación en que los créditos del mismo rango no se ejecuten simultáneamente.

En el caso de existir otros títulos con igual derecho que los que motivan la ejecución de la hipoteca, habrá de verificarse la subasta y la venta de las fincas objeto del procedimiento, dejando subsistentes las hipotecas correpondientes al valor total de dichos títulos y entendiéndose que el rematante las acepta como *gravámenes preferentes*, sin destinarse a su pago o extinción el precio del remate, en armonía con lo dispuesto en el Artículo 178 de la Ley. (Énfasis suplido.) Art. 151.2 de las Enmiendas al Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, Reglamento del Secretario de Justicia de 22 de agosto de 1992, Expediente Núm. 4783, pág. 80.

Pasemos entonces a examinar la Escritura Núm. 103 sobre compraventa e hipoteca presentada al Registro de la Propiedad por la recurrente en el presente caso. Además de efectuar la compraventa, los compradores reconocieron que adeudaban seis mil dólares ($6,000) tanto a la menor América Vázquez Santiago como al Sr. Cándido Rodríguez Beltrán.[13] En esa misma escritura, y para garantizar el

bles o al portador y cuando en una misma escritura se constituyeren dos (2) o más hipotecas sobre una finca o derecho sin establecer prioridad alguna, se entenderá que ninguno de dichos plazos o hipotecas tiene preferencia sobre los otros u otras respectivamente; y todas gozarán de igual rango y condición jurídica, a los efectos de este subtítulo." Art. 178 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2574.

El Art. 125 de la Ley Hipotecaria de 1893, en su 4to párrafo, disponía:

"Salvo pacto en contrario, siempre que el pago de un crédito asegurado con hipotecas se dividiere en varios plazos, aun formalizándose documentos endosables o títulos al portador, y cuando en la misma escritura se constituyeren dos o más hipotecas sobre la misma finca, se entenderá que ninguno de dichos plazos o hipotecas tiene preferencia sobre los otros, gozando todos de igual condición jurídica, a los efectos de este subtítulo. ..." 30 L.P.R.A. ant. sec. 221 (ed. 1955).

[13] No le asiste la razón al Registrador de la Propiedad recurrido cuando afirma que la hipoteca unilateral a favor de la recurrente no es inscribible porque los hipotecantes no hicieron constar la causa de la hipoteca a favor de la menor. "Tampoco

pago de dichas sumas adeudadas, los esposos León-Rodrí-
guez establecieron dos (2) hipotecas unilaterales a favor de
cada uno de sus acreedores. No se hizo constar en la men-
cionada escritura que una de las hipotecas tenía preferen-
cia sobre la otra. Ambas hipotecas gozan, pues, de igual
condición jurídica y, por lo tanto, de igual rango.

A pesar de que los esposos León-Rodríguez habían esta-
blecido ambas hipotecas a favor de sus dos (2) acreedores
en escritura pública, no presentaron la escritura al Regis-
tro de la Propiedad. Al no inscribirse, las hipotecas no que-
daron válidamente constituidas.

La Escritura Núm. 103 se presentó al Registro de la
Propiedad en 1973, casi nueve (9) años después de su otor-
gamiento y diez (10) meses después de haberse otorgado la
Escritura Núm. 60. El presentante sólo acompañó los aran-
celes correspondientes a la inscripción de la compraventa y
a una de las dos (2) hipotecas unilaterales. La única hipo-
teca que se inscribió fue a favor de Rodríguez Beltrán y se
dejó fuera del Registro de la Propiedad la hipoteca de la
menor Vázquez Santiago.

Aun cuando la derogada Ley Hipotecaria de 1893 no
exigía, como tampoco lo exige la ley vigente, que se acom-
pañaran los aranceles para que se inscribieran al mismo
tiempo ambas hipotecas unilaterales contenidas en la
misma escritura, ésta es la mejor práctica. De esta ma-
nera, el Registrador de la Propiedad inscribe ambas hipo-
tecas con idéntico rango, sin ulteriores contratiempos. No
obstante, si sólo una de las hipotecas unilaterales queda
inscrita, siempre se puede volver a presentar la misma es-

---

surge del documento la relación legal de la deuda reconocida por los compradores con
la menor de edad América Vázquez Santiago y la finca objeto del negocio jurídico."
Alegato, pág. 5. Aparte del reconocimiento de la deuda, los compradores hipotecan-
tes, los esposos León-Rodríguez, no detallaron la causa del contrato con respecto a su
acreedora Vázquez Santiago ni con respecto a su acreedor Rodríguez Beltrán. El Art.
1229 del Código Civil dispone que se presume la existencia de la causa aunque no se
exprese en el contrato y es lícita mientras el deudor no pruebe lo contrario. 31
L.P.R.A. sec. 3434. Si para inscribir la hipoteca de Rodríguez Beltrán no se le exigió
que la escritura expresara la causa, tampoco es necesario que se le exija a la recu-
rrente Vázquez Santiago.

critura acompañada de los respectivos aranceles para que se inscriba la otra hipoteca unilateral y ambas gozarán de igual rango, conforme lo ordena el Art. 178 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*. El inconveniente de esta práctica de no acompañar todos los aranceles de una vez consiste en que —de ocurrir un cambio de titular de la finca— del propio Registro de la Propiedad va a surgir un obstáculo que impide la inscripción de la segunda hipoteca unilateral, al menos temporeramente en lo que los tribunales emitan una resolución para reanudar el tracto y ordenar la inscripción.

En el presente caso, por razones que no constan en el Registro de la Propiedad, no se acompañaron los aranceles correspondientes a la hipoteca unilateral establecida a favor de la recurrente. También ocurrió un cambio en el titular registral del inmueble, por efecto de la dación en pago hecha en 1972 por los hipotecantes a favor de su coacreedor Rodríguez Beltrán. La inscripción de la Escritura Núm. 60 sobre dación en pago y asunción de hipoteca presentada en 1973 solo dos (2) días después de presentarse la Escritura Núm. 103, y el consecuente cambio de titularidad a favor de Rodríguez Beltrán, tuvo el efecto de cerrarle el Registro de la Propiedad a la hipoteca unilateral de la recurrente por faltar la previa inscripción a nombre de los esposos León-Rodríguez, quienes son los otorgantes que aparecen en la Escritura Núm. 103 a favor de la recurrente.

Ahora bien, es importante señalar que quien le cierra el Registro de la Propiedad, al menos temporeramente, es el propio *deudor* de la recurrente América Vázquez Santiago. El cambio de titularidad fue a raíz de la dación en pago del inmueble hecha por los deudores hipotecarios al señor Rodríguez Beltrán. A su vez éste asumió la hipoteca a favor de la recurrente. Esta dación en pago no fue notificada a la recurrente ni tampoco ella consintió a la sustitución de su primitivo deudor, como exige el Art. 1159 del Código Civil,

31 L.P.R.A. sec. 3243. Véanse: *Teachers Annuity v. Soc. de Gananciales*, 115 D.P.R. 277, 282 (1984); M.J. Godreau, *La hipotecabilidad del derecho arrendaticio (comentarios en torno al Artículo 158, Inciso 6to, de la vigente Ley Hipotecaria)*, 52 Rev. Jur. U.P.R. 381, 387–388 (1983). En los casos cuando el acreedor no consiente a la sustitución del deudor, el primitivo deudor no queda liberado. G. Figueroa Yáñez, *La asunción de deudas y la cesión de contrato*, Santiago de Chile, Ed. Jurística Chile, 1984, pág. 18.

A pesar de que las hipotecas unilaterales no se habían constituido al momento de otorgarse la Escritura Núm. 60 de 1972, el lenguaje de la escritura es claro en consignar que Rodríguez Beltrán asumió la *hipoteca* y no se consignó que asumió la deuda. Es norma general del Derecho que toda persona es responsable de todas las consecuencias naturales de sus propios actos. *Pueblo v. Lucret Quiñones*, 111 D.P.R. 716 (1981). Oponerse a que se inscriba una hipoteca que se asumió en escritura pública sería contrario a lo establecido por la doctrina de los actos propios. *Int. General Electric v. Concrete Builders*, 104 D.P.R. 871 (1976). Es decir, en el texto de la escritura pública se da por descontado que ambas hipotecas estaban inscritas.

La concurrencia de las tres (3) circunstancias tuvo el efecto de darle al señor Rodríguez Beltrán una ventaja registral que de ordinario no hubiese tenido. Primero, el hecho de que no se hubiese presentado al Registro de la Propiedad la Escritura Núm. 103 sobre compraventa e hipoteca cuando se otorgó la Escritura Núm. 60 sobre dación en pago y asunción de hipoteca. Segundo, que la Ley Hipotecaria y del Registro de la Propiedad no exije que se acompañen todos los aranceles correspondientes a todas las hipotecas unilaterales establecidas en la misma escritura para su inscripción. Esto le permitió a Rodríguez Beltrán acompañar exclusivamente los aranceles de la hipoteca a su favor y casi de inmediato (a los dos (2) días) presentar la Escritura Núm. 60. En tercer término, la ac-

tuación del Registrador de la Propiedad de aquel entonces al calificar la Escritura Núm. 103 fue errónea. Al inscribir la compraventa y una de las dos (2) hipotecas unilaterales que constaban en la escritura, el Registrador obvió por completo aquella parte del documento referente a la menor[14] y ni siquiera inscribió la mención de la hipoteca a favor de la recurrente, como era lo acostumbrado por los Registradores bajo la ley derogada cuando no se acompañaban los aranceles de la hipoteca. *Bello et al. v. El Registrador de Arecibo*, supra; *Sucn. Franceschi v. Registrador*, 42 D.P.R. 854 (1931); *Mora v. El Registrador de Mayagüez*, 32 D.P.R. 794 (1924); *Monserrate v. Registrador*, 31 D.P.R. 796 (1923). Sin embargo, cuatro días después de haber inscrito la compraventa y la hipoteca unilateral a favor de Rodríguez Beltrán, el Registrador de la Propiedad inscribió la dación en pago y la asunción de hipoteca, aclarando que se mencionaba en la Escritura Núm. 60 una hipoteca a favor de la menor Vázquez Santiago.[15]

Debido a la naturaleza del recurso gubernativo, no estamos aquí en posición de juzgar las actuaciones de los hipotecantes esposos León-Rodríguez ni las del señor Rodríguez Beltrán o sus representantes. La buena fe se presume siempre y el peso de la prueba le corresponde al que afirma que hubo mala fe. No obstante, en aras de que en el futuro queden debidamente salvaguardados los derechos de un acreedor menor de edad a cuyo favor se otorgue una escritura de hipoteca unilateral, nos corresponde aclarar cuál es la mejor práctica en estos casos.

---

[14] Aun cuando la Ley Hipotecaria y del Registro de la Propiedad no le exigía al Registrador de la Propiedad notificar la falta de los aranceles, en virtud de su peritaje jurídico el Registrador pudo notificarlos al percatarse que se trataba de un acreedor menor de edad.

[15] Recordemos que, con excepción de las menciones a favor del Estado, a los seis (6) meses de entrar en vigencia la Ley Hipotecaria y del Registro de la Propiedad caducaron las menciones que constaban en los asientos registrales. Art. 255 (30 L.P.R.A. sec. 2821).

## III

*Hipoteca unilateral a favor de un acreedor menor de edad*

La protección de los menores es un interés apremiante del Estado. En pro del bienestar de los menores se han reglamentado, entre otros, la concesión de los alimentos así como el trabajo de los menores.

La minoridad es una de las restricciones a la capacidad jurídica de la persona. Con ciertas excepciones, los menores no pueden disponer de su propiedad o contratar válidamente. Hemos reconocido, por ejemplo, que un menor no emancipado que tenga edad suficiente para discernir puede comparecer a firmar una escritura para aceptar una donación graciosa. *Piris v. Registrador*, 67 D.P.R. 811 (1947). Los padres o el tutor del menor deben velar por la protección del patrimonio de éste. Para asegurarse de que los bienes del menor no serán dilapidados, el legislador dispuso —entre otras medidas— que los bienes inmuebles del niño o la niña sólo podrán ser enajenados previa autorización judicial. Art. 159 del Código Civil, 31 L.P.R.A. sec. 616.

Como una de las disposiciones para proteger al menor, la ley suspende el término prescriptivo para ejercitar una causa de acción que nace durante la minoridad hasta tanto el menor alcance la mayoría de edad al cumplir los veintiún (21) años.[16] Tal como afirmáramos en *Márquez v. Tribl. Superior*, 85 D.P.R. 559, 562 (1962), "[e]l propósito de la excepción contenida en el ... Artículo 40 [del Código de Enjuiciamiento Civil, 33 L.P.R.A. sec. 254,] es proteger los

---

[16] "Si la persona con derecho a ejercitar una acción, que no sea la reivindicatoria de propiedad inmueble, fuese al tiempo de nacer la causa de la acción:

"(1) menor de edad;

. . . . . . . .

"el tiempo que dure tal incapacidad no se considerará parte del tiempo fijado para empezar a ejercitar la acción." Art. 40 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 254. Véanse: *Calo Morales v. Cartagena Calo*, 129 D.P.R. 102 (1991); *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616, 626 (1986).

intereses de los incapaces hasta el momento en que adquieren la capacidad jurídica necesaria para hacer valer sus derechos". Véase, también, *Sierra Serpa v. Martínez et al.*, 132 D.P.R. 670 (1993).

En el recurso gubernativo ante nos, la concurrencia de las tres (3) circunstancias ya mencionadas hicieron posible que el deudor de una menor de edad, al momento de otorgar la escritura, le cerrara el Registro de la Propiedad a su acreedora.

Bajo el poder inherente que tiene este Tribunal para reglamentar la profesión jurídica en general,([17]) y siendo que el ordenamiento jurídico protege a los menores, examinemos cuál debe ser la conducta del notario al autorizar una escritura de hipoteca unilateral que se establece en favor de un acreedor menor de edad que no comparece al acto, ni representado por sus padres ni por un tutor, y cuál debe ser la conducta del Registrador de la Propiedad al calificar dicha escritura.

*Deber del notario*

Para constituir hipoteca unilateral, ya dijimos que basta con que el hipotecante otorgue una escritura pública a esos efectos y la inscriba en el Registro de la Propiedad. No es necesario que al acto de otorgar la escritura comparezca la persona a favor de quien se constituye la hipoteca unilateral ni tampoco que el acreedor esté enterado de dicha garantía. *Santiago v. El Registrador de Guayama*, supra, pág. 857. Ahora bien, la ley es clara en disponer que se notificará al prospectivo acreedor hipotecario mediante el requerimiento notarial a fin de que el acreedor acepte o rechace la hipoteca constituida a su favor. La Ley Hipotecaria y del Registro de la Propiedad no establece límite de tiempo para que el dueño de la finca haga el requerimiento notarial al acreedor. Dicha ley tampoco establece un límite

---

([17]) *In re Delgado*, 120 D.P.R. 518, 527 (1988), y casos allí citados.

de tiempo para que el acreedor —si se entera de la existencia de la escritura— acuda al Registro de la Propiedad, bien sea a que le inscriban la hipoteca unilateral a su favor[18] o a que acuda a aceptar la hipoteca ya inscrita por su deudor aunque el deudor no le haya hecho el requerimiento notarial.

La nueva Ley Notarial de de Puerto Rico —Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*)— le exige al notario hacerle a los otorgantes las advertencias legales pertinentes y, aún más, consignar en el documento aquellas advertencias que a juicio del notario deban detallarse expresamente. Art. 15(f), 4 L.P.R.A. sec. 2033(f). El notario que autorice una escritura de hipoteca unilateral habrá de tener particular cuidado en dar las advertencias pertinentes en caso que el acreedor no comparezca al acto y, con mayor razón, si este acreedor es menor de edad.

> La función del notario trasciende el acto externo de legalización de unas firmas. Presupone la creación de un nivel de entendimiento y comunicación entre el fedante y los otorgantes que le permite a éstos formar una racional conciencia del acto en que concurren. La fe pública notarial tiene como base la voluntad ilustrada de los contratantes; no puede ser fruto de la ignorancia y la oscuridad. *In re Meléndez Pérez*, 104 D.P.R. 770, 775–776 (1976).

> La omisión de analizar la situación y hacer las advertencias pertinentes viola el deber de ilustración y consejo que es inherente a la práctica del notariado. Dicho deber es aplicable por lo menos desde que resolvimos *In re Meléndez Pérez*, .... Así lo señalamos en *In re Flores Torres*, 119 D.P.R. 578[, 584] (1987). *In re Chaar Cacho*, 123 D.P.R. 655, 663 (1989).

En su función de ilustrar a las partes,[19] deberá dar su consejo como abogado notario para que se protejan los de-

---

[18] Si el acreedor hipotecario acude al Registro de la Propiedad a que le inscriban a su favor la hipoteca unilateral, se entiende que hay una aceptación tácita y no requiere que el Registrador de la Propiedad escriba la nota marginal de aceptación de la hipoteca.

[19] *In re Colón Muñoz*, 131 D.P.R. 121 (1992).

rechos del acreedor o acreedores que no estén presentes al momento de otorgarse la escritura.

Si se trata de una escritura de hipoteca unilateral inmobiliaria, el notario habrá de advertir las consecuencias del incumplimiento de la obligación contraída por el hipotecante tales como que se declare la deuda vencida y exigible, que se celebre el consiguiente proceso de ejecución de hipoteca y la posibilidad de que se subaste el inmueble. P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, págs. 184–185.

La hipoteca unilateral puede ser inscrita, entre otros, por el hipotecante o bien por el acreedor hipotecario.[20] Si el acreedor no comparece a otorgar la escritura, primero, el notario deberá advertirle verbalmente a la parte hipotecante que necesita presentar una copia certificada de la escritura de hipoteca unilateral al Registro de la Propiedad para que ésta tenga pleno efecto y valor; también deberá acompañar esta escritura con los derechos pagaderos en comprobantes o Sellos de Rentas Internas requeridos por ley. Es buena práctica que el notario consigne esta advertencia por escrito en aquellas escrituras en que el acreedor sea un menor y no comparezca al acto, ni representado por sus padres ni por un tutor. De igual forma, el notario deberá consignar en el instrumento público el nombre completo del menor, su edad, el nombre de sus padres o tutor y, si es posible, su dirección.

Segundo, el notario advertirá al hipotecante que, para que medie una decisión por parte del acreedor, es necesario que practique el requerimiento notarial y que la Ley Hipotecaria y del Registro de la Propiedad le concede dos (2) meses al acreedor a partir del requerimiento para que acepte o rechace la hipoteca unilateral constituida a su favor.

---

[20] Los títulos en el Registro de la Propiedad pueden ser inscritos por el adquirente del derecho, por el que lo trasmite, por quien tenga interés y por quien tenga la representación de cualquiera de ellos. Art. 48 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2251.

En tercer lugar, el notario explicará que el dueño de la finca gravada puede cancelar la hipoteca unilateral, pero que el reglamento hipotecario requiere que el dueño otorgue una escritura cancelatoria. También advertirá a la parte hipotecante que, una vez inscrita la hipoteca, la finca permanecerá gravada hasta tanto se presente al Registro de la Propiedad dicha escritura cancelatoria.

En el caso ante nos, el notario hizo constar en la escritura el nombre de la menor, su edad y el nombre de sus padres. Debido a que la Escritura Núm. 103 data de 1964, esto es, con anterioridad a la vigencia de la Ley Notarial de Puerto Rico y de nuestros pronunciamientos en *In re Meléndez Pérez*, supra, el notario no consignó aquellas advertencias que deben detallarse expresamente.[21]

## *Deber del Registrador de la Propiedad*

Una vez se presente la escritura de hipoteca unilateral al Registro de la Propiedad, la nueva Ley Hipotecaria y del Registro de la Propiedad faculta al Registrador a calificar este documento. Art. 64 (30 L.P.R.A. sec. 2267); *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110 (1986). En función de su peritaje jurídico, el Registrador de la Propiedad examinará la validez de los actos y contratos contenidos en el instrumento público. Hemos reconocido que la calificación registral es piedra angular del principio de legalidad. *Alameda Tower Associates v. Muñoz Román*, 129 D.P.R. 698 (1992). En *Preciosas V. Del Lago v. Registrador*, 110 D.P.R. 802, 810 (1981), expresamos que "[una] calificación registral no tiene 'por objeto declarar la existencia o inexistencia de un derecho dudoso o contravertido entre

---

[21] En su alegato, la parte recurrente solicita que se investigue la conducta profesional del notario que autorizó la Escritura Núm. 103 y la Escritura Núm. 60, al igual que la conducta de su hijo, quien autorizó la Escritura Núm. 25 de 13 de abril de 1989. De los documentos que constan en el expediente del caso no surge actuación alguna que amerite una investigación tal. La advertencia a la compradora Torres Ginés de inscribir su escritura con la mayor premura está dentro del deber de ilustrar del abogado-notario. P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, pág. 176.

partes contendientes, sino simplemente publicar, mediante su inscripción, un derecho real o situación jurídica inmobiliaria' ". (Énfasis suprimido.)

El ordenamiento requiere que se acompañen unos derechos junto con el documento que se presenta para su inscripción en el Registro de la Propiedad. En caso de no acompañar tales derechos, la Ley Hipotecaria y del Registro de la Propiedad exige que se notifique este defecto al presentante, por lo que el documento no se inscribirá hasta tanto se acompañen todos los aranceles y Sellos de Rentas Internas que cancela la inscripción u operación a realizarse. Art. 74 (30 L.P.R.A. sec. 2277).

Cuando en una misma escritura se constituyen dos (2) o más hipotecas unilaterales sobre una finca o derecho, ambas tienen la misma preferencia y gozan del mismo rango, salvo pacto en contrario. Aunque la ley no exige que se acompañen los derechos de todas las hipotecas unilaterales al mismo tiempo, para asegurarse que todas tengan el mismo rango en el Registro de la Propiedad sin ulteriores inconvenientes, ya reiteramos que la mejor práctica es que se acompañen todos los derechos correspondientes a las hipotecas a la vez que se presenta la escritura.

Ahora bien, si se presenta al Registro de la Propiedad la escritura en la que se establecen dos (2) hipotecas unilaterales y sólo se acompañan los aranceles de una de ellas, el Registrador de la Propiedad deberá examinar la escritura a fin de determinar si el acreedor de la hipoteca que no se inscribirá compareció al acto ante el notario. En caso de que el acreedor no haya comparecido y surja de la escritura que al momento del otorgamiento éste era un menor de edad, el Registrador de la Propiedad deberá notificar tanto al presentante como a los padres del menor a la dirección que aparece en la escritura. De no constar la dirección de los padres o el tutor, notificará al notario que autorizó la escritura. Esta notificación será en el sentido de que se ha presentado para su inscripción dicha escritura de hipoteca

unilateral y que no quedará constituida la hipoteca del menor si no acompañan los derechos que correspondan.(²²)

## IV

*El tercero registral y la previa inscripción*

La recurrente objeta la calificación final emitida por el Registrador de la Propiedad, Sección Tercera de San Juan, y alega que ésta es "contraria al principio del tercero registral altamente conocido en nuestro sistema de derecho hipotecario" y a lo dispuesto en el Art. 57 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*. Es imperativo que aclaremos si, en aquellos casos en que no se trate de un tercero(²³) y a la luz del principio del tracto sucesivo enunciado en el referido Art. 57, puede el Registrador de la Propiedad inscribir una escritura si no consta la previa inscripción.

La Ley Hipotecaria de 1979 dispone:

Para registrar documentos por los que se declaren, trasmitan, graven, modifiquen, o extingan el dominio y demás derechos reales sobre bienes inmuebles, deberá constar previa-

---

· (²²) Luego de notificar, el Registrador de la Propiedad puede inscribir de inmediato la hipoteca unilateral que sí está presentada ante él o ella, o —a su discreción— puede esperar un término de tiempo breve (*e.g.*, diez (10) días) en lo que se recibe y contesta su notificación.

(²³) Hay que reconocer que, conforme a los documentos que obran en el expediente, el señor Rodríguez Beltrán era el titular de la finca al momento de presentar su escritura la aquí recurrente en 1989. Sin embargo, él no es un tercero registral. Nos explicamos. Entre los requisitos que exige la Ley Hipotecaria y del Registro de la Propiedad para recibir la protección de tercero, el adquiriente debe ser un tercero civil. Art. 105 (30 L.P.R.A. sec. 2355); D. Martínez Irizarry, *El principio de la fe pública registral en Puerto Rico*, 28 Rev. C. Abo. P.R. 719 (1969). El señor Rodríguez Beltrán no cumple con este requisito. Él tuvo conocimiento del origen de la hipoteca unilateral a favor de la recurrente por cuanto fue parte de la Escritura Núm. 60 y el único que inscribe su hipoteca en el Registro de la Propiedad. Aún más, Rodríguez Beltrán aceptó el inmueble como dación de pago a su acreencia de seis mil dólares ($6,000) a la vez que asumió la hipoteca de seis mil dólares ($6,000) de su acreedora y aquí recurrente América Vázquez Santiago. El señor Rodríguez Beltrán no sólo no es tercero registral, sino que al asumir la hipoteca en escritura pública se convirtió en el deudor.

mente registrado el derecho de la persona que otorgue o en cuyo nombre sean *otorgados los actos o contratos referidos.*

Se denegará la registración de resultar inscrito el derecho a favor de persona distinta de la que otorga la trasmisión o gravamen. No obstante, podrán inscribirse sin el requisito de la previa inscripción las resoluciones y ejecutorias, que se refieren en las secs. 2761 a 2777 de este título. Art. 57 de la Ley Hipotecaria y del Registro de la Propiedad, *supra.*

Bajo la derogada Ley Hipotecaria de 1893, el principio del tracto sucesivo quedaba recogido en el Art. 20 (30 L.P.R.A. ant. sec. 45).[24]

El concepto de la previa inscripción o el tracto sucesivo exige que el derecho de la persona que otorgue la transmisión o gravamen esté previamente inscrito en el Registro de la Propiedad. *Aponte Donato v. Registrador*, 115 D.P.R. 699, 700 (1984). Así, si el vendedor que comparece en la escritura de compraventa no es el dueño según el Registro de la Propiedad, no se cumple con el requisito de la previa inscripción y el Registrador de la Propiedad viene obligado a denegar la inscripción solicitada.

Como dijimos en *Rosado Collazo v. Registrador*, 118 D.P.R. 577, 584 (1987), para garantizar la certeza de las constancias del Registro de la Propiedad, es medular el principio del tracto sucesivo. El Registrador, pues, viene obligado a exigir correspondencia entre el nombre del transmitente y el titular registral. Véase el Art. 99.4 del

---

[24] "Para inscribir o anotar los títulos en que se transfiera o grave el dominio o la posesión de bienes inmuebles o derechos reales, deberá constar previamente inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se haya la transmisión o gravamen.

"Los registradores denegarán la inscripción de dichos títulos mientras no se cumpla este requisito, siendo responsables directamente de los perjuicios que causen a un tercero por la infracción de este precepto.

"No obstante, podrá inscribir sin dicho requisito los títulos otorgados por personas que hubiesen adquirido el derecho sobre los mismos bienes con anterioridad al día en que empezó a regir la Ley Hipotecaria, siempre que justifiquen su adquisición con documentos fehacientes y no estuviese inscrito el mismo derecho a favor de otra persona, pero en el asiento solicitado se expresarán las circunstancias esenciales de tal adquisición tomándolas de los documentos necesarios al efecto.

"En el caso de resultar inscrito aquel derecho a favor de persona distinta de la que otorgue la transmisión o gravamen, los registradores denegarán la inscripción solicitada." 30 L.P.R.A. sec. 45 (ed. 1955).

Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-99.4, edición especial, según enmendado.

El principio de tracto sucesivo tiene el propósito de garantizar que no se interrumpa la historia registral en cuanto a los derechos reales de una finca. Una vez se realice la primera inscripción del inmueble, el Registro de la Propiedad deberá dar a conocer con exactitud el historial de la titularidad de la finca de una manera enlazada y encadenada. Este principio tiene un efecto de protección al titular registral, pues su derecho no será transferido sin su consentimiento. D. Martínez Irizarry, *Los principios hipotecarios bajo la nueva legislación en Puerto Rico*, 50 Rev. Jur. U.P.R. 195, 215 (1981).

El principio de tracto sucesivo tiene ciertas excepciones. Por ejemplo, no opera como obstáculo en el Registro de la Propiedad en los casos de inscripción de dominio en procedimientos de expropiación forzosa por parte del Estado. Art. 59 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2262; *E.L.A. v. Registrador*, 111 D.P.R. 117, 122 (1981). Tampoco requiere que los bienes inscritos a favor del causante se registren a nombre de los mandatarios, representantes, liquidadores, albaceas y demás personas que con carácter temporal actúen con autorización de ley. Art. 60 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2263.

Sin embargo, contrario a lo alegado por la recurrente, la Ley Hipotecaria y del Registro de la Propiedad no exceptúa del requisito de la previa inscripción los casos en que el titular, según el Registro de la Propiedad, no es tercero registral.[25] La previa inscripción constituye un requisito

---

[25] La recurrente, al parecer, confunde el requisito de la previa inscripción que aparece en el Art. 57 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2260, con lo resuelto por este Tribunal con relación al Art. 17 de la derogada Ley Hipotecaria de 1893 (30 L.P.R.A. ant. sec. 42), equivalente al Art. 56 de la nueva ley, 30 L.P.R.A. sec. 2259. Véase *Roig v. El Registrador de la P.*, 17 D.P.R. 954 (1911), y su progenie. El artículo invocado por el Registrador de la Propiedad

formal que garantiza la protección del titular que aparece en el Registro de la Propiedad. Cuando la finca que se hipoteca no está inscrita en el Registro de la Propiedad a nombre del hipotecante que compareció a la escritura, el Registrador de la Propiedad denegará la inscripción de la hipoteca. *Dávila v. El Registrador*, 20 D.P.R. 153 (1914). Es de notar que siempre existe la opción de acudir a los tribunales de justicia para que se corrija el tracto y se ordene la inscripción solicitada. Art. 7 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2051; *Pascual v. Fernández Sierra*, 108 D.P.R. 426 (1979).

Si bien es cierto que el señor Rodríguez Beltrán no tiene la protección como tercero registral, él es quien aparece como titular registral. En virtud del Art. 57, *supra*, el Registrador de la Propiedad no tiene la facultad para inscribir el título de la recurrente si no existe la previa inscripción a favor de los esposos León-Rodríguez, quienes son sus transmitentes, en ausencia de una resolución judicial a esos efectos.

## V

*Conclusión*

Opinamos que el contrato de hipoteca suscrito a favor de la señora Vázquez Santiago cumple con todos los requisitos del Art. 1756 del Código Civil, 31 L.P.R.A. sec. 5001.

Reconocemos que la hipoteca unilateral de la recurrente ha cumplido uno (1) de los dos (2) requisitos de ley para que quede válidamente constituida, esto es, que conste en escritura pública. Para cumplir con el segundo requisito de la inscripción en el Registro de la Propiedad, la recurrente puede acudir al tribunal de instancia y presentar la demanda correspondiente solicitando que se emita una reso-

---

recurrido para denegar la inscripción no es el Art. 56, *supra*, sino el Art. 57, *supra*, el cual se refiere a un requisito formal. Roca Sastre, *op. cit.*, pág. 332.

lución para reanudar el tracto y ordenar la inscripción. Art. 110 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2360. Cuando se presente dicha resolución al Registro de la Propiedad, la hipoteca unilateral a favor de América Vázquez Santiago podrá gozar de la misma preferencia y del mismo rango que tuvo la hipoteca de su deudor Carlos Rodríguez Beltrán, siempre que no se afecten los derechos de terceros.[26]

Pasemos, pues, a resolver si el Registrador de la Propiedad recurrido actuó correctamente al denegar la inscripción solicitada y si eventualmente puede inscribirse la hipoteca unilateral a favor de la recurrente.

Por cuanto al momento de presentarse la escritura de hipoteca a favor de la aquí recurrente no existía la previa inscripción requerida por el Art. 57, *supra*, concluimos que el Registrador de la Propiedad actuó correctamente al denegar la inscripción solicitada.[27]

Considerando todas las particularidades de este caso,[28]

---

[26] De los documentos que obran en el expediente surge que no había un tercero registral al momento en que la recurrente presentó su escritura, puesto que el señor Rodríguez Beltrán era el titular registral de la finca. La Escritura Núm. 103 se presentó el 14 de abril de 1989 a las 9:25 a.m. En virtud del principio "primero en tiempo, primero en derecho", y de la nota al margen de la anotación preventiva hecha por el Registrador de la Propiedad sobre el recurso gubernativo presentado ante esta Curia, cualquier posterior titular quedó debidamente advertido de la presentación de la escritura de hipoteca unilateral a favor de la señora Vázquez Santiago.

[27] Aunque actuó correctamente, el Registrador de la Propiedad recurrido se equivoca al argumentar en su alegato que este caso trata de una mención de hipoteca. Por el contrario, la recurrente Vázquez Santiago interesa inscribir una hipoteca unilateral.

[28] El cuadro de las particularidades de este caso, del examen de las escrituras que obran en el expediente y según lo alegado por la recurrente, es patético. En este caso, la señora Vázquez Santiago era menor al momento de otorgarse la escritura de hipoteca unilateral a su favor. Ni sus padres ni un tutor comparecieron en representación suya al acto de otorgamiento. Los deudores originales León-Rodríguez no le pagaron su acreencia en el término convenido. Ellos tampoco presentaron la escritura de hipoteca unilateral al Registro de la Propiedad. Siendo la acreedora, a la recurrente no se le notificó de la dación en pago ni del cambio de su deudor, al que no consintió como exige el ordenamiento. El presentante de la Escritura Núm. 103 acompañó sólo los derechos de hipoteca del señor Rodríguez Beltrán y la hipoteca a favor de la menor no se inscribió, aunque los aranceles ascendían a sólo seis dólares

en especial que fue su deudor quien cerró el acceso al Registro de la Propiedad a la recurrente, estimamos prudente añadir que nuestra posición no afecta en modo alguno el remedio que puede solicitar América Vázquez Santiago al tribunal de instancia para que se reanude el tracto y se emita una resolución para ordenar que se inscriba su hipoteca unilateral.([29]) Consideramos que la señora Vázquez Santiago podía acudir al Registro de la Propiedad, con diligencia, para hacer constar la correspondiente anotación de aviso de demanda en el Registro a fin de notificar a los terceros.([30])

---

($6). La inscripción de la dación en pago a favor de su deudor tuvo el efecto de cerrar el acceso al Registro de la Propiedad a la hipoteca unilateral de la recurrente. Cuando en 1989 la señora Vázquez Santiago se entera de lo acontecido, realiza gestiones con su deudor, las cuales resultan infructuosas. Luego, el señor Rodríguez Beltrán vendió el inmueble y no pagó la deuda de seis mil dólares ($6,000) que tenía con la recurrente. Aunque es comprensible su reclamo de justicia, el recurso gubernativo sólo permite que se dilucide la controversia surgida entre la parte recurrente y el Registrador de la Propiedad recurrido.

([29]) En el pleito ante el tribunal de instancia, la señora Vázquez Santiago podrá presentar evidencia de que fue en 1989 que se enteró de lo acontecido, que es el año cuando realiza gestiones con su deudor. Si bien es cierto que el señor Rodríguez Beltrán hizo reconocimiento de deuda, al menos en 1972 mediante escritura pública y que para 1989 la obligación por hipoteca aparentaba estar prescrita por haber transcurrido más de quince (15) años, la recurrente puede presentar evidencia de cualesquiera interrupciones al período prescriptivo. Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303; *Vda. de Carlo v. Toro*, 99 D.P.R. 200, 211–212 (1970). Además, la defensa de la prescripción no puede esgrimirse si quien la levanta actuó de mala fe con respecto a su acreedor. *Véanse: Cintrón v. E.L.A.*, 127 D.P.R. 582 (1990); *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585 (1981).

En cuanto al principio de la buena fe y la doctrina del abuso del derecho, consúltense también a *Soriano Tavárez v. Rivera Anaya*, 108 D.P.R. 663, 667 (1979); *Jordán-Rojas v. Padró-González*, 103 D.P.R. 813, 821 (1975).

([30]) El Registrador de la Propiedad hizo constar mediante nota al margen, "Anotación A", que se había presentado un recurso gubernativo al Tribunal Supremo con respecto a la hipoteca de la recurrente cuya inscripción había sido denegada. Dicha notificación hace Registro contra cualquier posterior titular que haya inscrito su derecho durante el lapso de tiempo que cubre desde que se presentó el recurso gubernativo hasta sesenta (60) días después de que se tome razón de la resolución definitiva por parte de este Tribunal. Art. 77 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2280. Art. 90.2 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-99.4, edición especial.