# 2002 DTA 127

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO**

DANIEL GONZALEZ QUIJANO
Demandante-Apelante

v.

CARLOS M. PACHECO ALMESTICA, DALMA I. ALVAREZ RIVERA Y LA SOCIEDAD DE GANANCIALES CONSTITUIDA ENTRE AMBOS, GLOBAL MORTGAGE CORPORATION
Demandados-Apelados

Núm. KLAN-02-00046

San Juan, Puerto Rico, a 15 de agosto de 2002

Panel integrado por su Presidente, el Juez Miranda De Hostos,
la Juez Hernández Torres y el Juez Martínez Torres

Martínez Torres, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos Daniel González Quijano, parte demandante-apelante, y nos solicita la revisión de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 24 de octubre de 2001, notificada y archivada en autos el 31 de octubre de 2001. Mediante dicha sentencia, el Tribunal de Primera Instancia desestimó las causa de acción de cobro de dinero y ejecución de hipoteca. Además ordenó a su vez al Registrador de la Propiedad de Carolina II, que cancelara de los libros a su cargo la inscripción de una hipoteca constituida en garantía de un pagaré al portador por la suma de $25,000 o más interés, ya que la escritura había sido inscrita sin haberse obtenido la autorización del Secretario de la Vivienda, que se requería en este caso.

Luego de estudiados los hechos y el derecho aplicable, se confirma la sentencia apelada.

**I**

El 22 de noviembre de 1983, Osvaldo Nieves Acevedo y su esposa, Lourdes Esther Rohena Pérez,

otorgaron la escritura pública número 60, ante el notario Carlos Colón Marchand, mediante la cual adquirieron un bien inmueble por la suma de cuarenta y nueve mil cien dólares ($49,100.00). Dicha propiedad consta inscrita al folio 181 del tomo 1051 finca número 44,142 del Registro de la Propiedad de Carolina II, cuya descripción lee como sigue:

*"URBANA: Parcela de terreno, marcada con el número cuarenta y seis del Bloque "AH", radicado en el Barrio Canovanillas del término municipal de Carolina, Puerto Rico, como un área superficial de trescientos sesenta y cinco punto setenta y dos metros cuadrados, en el plano de Inscripción del Proyecto "Terrazas de Carolina". En lindes por el Norte, con el lote AH-47 distancia de 23 metros, por el Sur, con la calle 37 en arco de 19.95 metros en un arco de 5.38 metros, por el Este, con propiedad privada distancia de 18.73 metros; y por el Oeste con la calle 11 en 11.22 metros de distancia. Enclava una casa de hormigón y bloques de una planta para uso residencial. [...]."*

(Ap. Anejo 12, a la pág. 37).

Para esa misma fecha, Osvaldo Nieves Acevedo y su esposa, Lourdes Esther Rohena Pérez, constituyeron hipoteca sobre la finca anteriormente descrita en garantía de pagaré otorgado a favor de The Chase Manhattan Bank por la suma principal de cuarenta y cinco mil dólares ($45,000.00), con intereses pactados al once y medio por ciento (11½%) anual, pagaderos en plazos mensuales de quinientos setenta y tres dólares con cincuenta y cinco centavos ($573.55) el primer mes y cuatrocientos cuarenta y cinco dólares con noventa y cinco centavos ($445.95) por los próximos trescientos cincuenta y nueve (359) meses consecutivos, comenzando el día 1ro de enero de 1984 y terminando el 1ro de diciembre de 2013. (Ap. Apéndice 12, a las págs. 38-39). La adquisición de la propiedad anteriormente descrita, así como la hipoteca, fueron otorgadas sujetas a las condiciones restrictivas en la inscripción primera de la finca 43,989 al folio 169 tomo 1048 del Registro de la Propiedad de Carolina II. (Ap. Apéndice 12, a las págs. 38-39). La condición restrictiva inscrita que surge del Registro de la Propiedad dispone lo siguiente:

*"Los compradores no podrán designar la estructura y el solar objeto de la presente compraventa a otro uso que no sea el de su residencia habitual y permanente, ni podrán subarrendar, transferir, hipotecar o dar o garantía la mencionada propiedad sin la previa autorización del Secretario de la Vivienda.*

*...".*

(Apéndice 7, a la pág. 20).

El 30 de julio de 1987, Osvaldo Nieves Acevedo y su esposa otorgaron una nueva hipoteca a favor de Chase Manhattan Bank, con la autorización del Departamento de la Vivienda y el Banco y Agencia de Financiamiento de la Vivienda, la cual fue registrada por medio de la inscripción segunda al folio 182 vuelto del tomo 1051 del Registro de la Propiedad de Carolina II. (Ap. Anejo 12, a la pág. 40).

Por ello, el 6 de octubre de 1988, el Registrador de la Propiedad de Carolina II canceló mediante nota marginal la hipoteca constituida a favor de Chase Manhattan Bank el 22 de noviembre de 1983. La nota marginal de cancelación lee de la siguiente manera:

*"Cancelada totalmente la hipoteca que resulta de la adjunta inscripción por pago de su importe y consentirlo así Fiddler, González y Rodríguez, representado por Julio M. Rodríguez, mayor de edad, casado, abogado y vecino de Guaynabo, con facultades acreditadas bajo en número 277, tenedor por endoso del pagaré dando fe el notario de haberlo cancelado según la escritura número 75 otorgada en San Juan el 19 de enero de 1988 ante el notario Raúl J. Vilá Sellés presentada a las 11:36 de la mañana del 3 de febrero de 1988 al asiento 494 del diario 281. Carolina, a 6 de octubre de 1988."*

(Ap. Anejo 12, a la pág. 37).

El 3 de febrero de 1990, Osvaldo Nieves Acevedo y su esposa otorgaron otro pagaré con garantía hipotecaria por la cantidad de veinticinco mil dólares ($25,000.00) con intereses pactados al doce por ciento (12%) anual. Para garantizar dicho pagaré, Osvaldo Nieves Acevedo y su esposa otorgaron la escritura de hipoteca número 7 ante el notario Angel G. Derkes Guzmán, la cual fue inscrita al folio 183 del tomo 1051 del Registro de la Propiedad de Carolina, inscripción tercera. (Ap. Anejo 12, a la pág. 41). Al momento de efectuarse dicha transacción no hubo autorización ni consentimiento previo del Secretario de la Vivienda para constituir la hipoteca anteriormente mencionada. (E.N.P. a la pág. 4.)

El 25 de marzo de 1992, dos (2) años después, la parte demandada–apelada, Carlos Pacheco Améstica y su esposa, Dalma Ivelisse Alvarez Rivera, adquirieron por compra de Osvaldo Nieves Acevedo y su esposa, la propiedad gravada con la hipoteca número 7 otorgada el 3 de febrero de 1990. Ese mismo día, las partes adquirentes de la propiedad otorgaron hipoteca en garantía de un pagaré por cincuenta mil cien dólares ($50,100.00) a favor de Global Mortgage Corporation, ante el notario público Angel M. Rivera Munich, inscrita al folio 184 del tomo 1051 del Registro de la Propiedad de Carolina. (Ap. Anejo 12, a la pág. 42).

La parte demandante-apelante, Daniel González Quijano, adquirió por medio de negociación y entrega de Juan Benítez Muñoz, el pagaré al portador por la suma de veinticinco mil dólares ($25,000.00) con intereses al doce por ciento (12%) anual, emitidos por Osvaldo Nieves Acevedo y su esposa. Dicho pagaré era vencedero a la presentación, garantizado por la hipoteca número 7, inscrita al folio 183 del tomo 1051 del Registro de la Propiedad de Carolina.

El 18 de mayo de 1998, Daniel González Quijano, parte demandante-apelante, presentó ante el Tribunal de Primera Instancia una demanda en cobro de dinero y ejecución de hipoteca contra los dueños inscritos de la propiedad, Carlos M. Pacheco Améstica y su esposa, Dalma I. Alvarez Rivera, así como contra Global Mortgage Corporation. En dicha demanda, González Quijano alegó ser tenedor de buena fe del pagaré suscrito por la suma de veinticinco mil dólares ($25,000.00) otorgado el 3 de febrero de 1990, garantizado con hipoteca. El 29 de julio de 1998, el Tribunal de Primera Instancia ordenó la anotación de rebeldía de los co-demandados-apelados, Carlos M. Pacheco Améstica y su esposa, por haber transcurrido el término para que dicha parte hiciera la correspondiente alegación responsiva. Para el 18 de agosto de 1998, la codemandada Global Mortgage Corporation presentó su contestación a la demanda y alegó que la hipoteca otorgada mediante la escritura número 7 era nula por haberse constituido en contravención a las restricciones inscritas al folio 169 del tomo 1048 del Registro de la Propiedad de Carolina II, la cual le impone al adquirente beneficiario de subsidio de vivienda la obligación de obtener la autorización previa del Secretario de la Vivienda para hipotecar la propiedad así adquirida.

El 2 de marzo de 2001, el banco y la Agencia de Financiamiento de la Vivienda le envió una misiva a Osvaldo Nieves Acevedo y su esposa, en la que señaló que no tiene objeción a que constituyan un pagaré al portador con garantía hipotecaria. Además, señaló que la propiedad objeto de controversia no está sujeta a devolución de prepago y de subsidio alguno. Ese mismo día, el banco y la Agencia de Financiamiento de la Vivienda otorgaron la escritura número 1, ante el notario Antonio Valcárcel Cervera, mediante la cual se expresó que la propiedad objeto de controversia no está sujeta a devolución de prepago ni subsidio y proceden a ratificar la escritura de constitución de hipoteca número 7 otorgada el 3 de febrero de 1990 ante el notario Angel G. Derkes Guzmán.

Así las cosas, el 11 de septiembre de 2001, se celebró la vista del juicio en su fondo. La parte demandante-apelante, Daniel González Quijano, sometió en evidencia entre otros documentos, la certificación registral sobre el inmueble hipotecado y presentó su propio testimonio. Por su parte, la codemandada-apelante, Global Mortgage Corporation, sometió también en evidencia entre otros documentos, una certificación registral. Según

surge de la exposición narrativa de la prueba estipulada por las partes, la parte demandante-apelante, Daniel González Quijano, declaró lo siguiente:

*"El demandante declaró que no fue parte en el negocio que produjo el otorgamiento de la escritura de hipoteca en garantía de pagaré por $25,000.00 que adquirió. Declaró además que al momento de adquirir no conocía a los otorgantes del pagaré y que no examinó las constancias del Registro antes de adquirir el pagaré.*

*El demandante declaró que contrató un abogado para que radicara una demanda de ejecución de hipoteca contra los dueños inscritos de la propiedad el Sr. Carlos Pacheco y su esposa Dalma I. Alvarez Rivera. No hizo un requerimiento previo de cobro.*

*El demandante declaró que el principal ni sus intereses le han sido pagados en todo ni en parte."*

(E.N.P. a las págs. 3-4).

Además, hay que señalar que la escritura de ratificación suscrita por el Banco y Agencia de Financiamiento de la Vivienda al momento del juicio todavía no había sido presentada al Registro de la Propiedad.

El 24 de octubre de 2001, el Tribunal de Primera Instancia dictó sentencia en el caso desestimando las causas de acción sobre cobro de dinero y ejecución de hipoteca. Además, le ordenó al Registrador de la Propiedad de Carolina II, que cancelara de los libros a su cargo la inscripción de la hipoteca constituida mediante la inscripción número 7, otorgada el 3 de febrero de 1990, ante el notario Angel G. Derkes Guzmán, en garantía de un pagaré al portador por la suma de veinticinco mil dólares ($25,000.00) con intereses al doce por ciento (12%), vencedero a la presentación, suscrito ante el mismo notario bajo el testimonio 1,705, en el tomo 1051 del folio 183 finca número 44,142, por razón de que la misma fue inscrita sin haberse obtenido la autorización del Secretario de la Vivienda.

Así las cosas, el 13 de noviembre de 2001, la parte demandante-apelante, Daniel González Quijano, radicó ante el foro de primera instancia una moción de determinaciones de hechos adicionales. El 11 de diciembre de 2001, el Tribunal de Primera Instancia atendió la misma y la declaró sin lugar.

La parte demandante-apelante, Daniel González Quijano, inconforme con dicha determinación presentó el 15 de enero de 2002 recurso de apelación ante este Tribunal de Circuito de Apelaciones. En su escrito de apelación nos señala la parte demandante-apelante, Daniel González Quijano, que erró el Tribunal de Primera Instancia al concluir como cuestión de derecho que la hipoteca número 7 otorgada el 3 de febrero de 1990, inscrita al folio 183 del tomo 1051 del Registro de la Propiedad de Carolina, finca número 44,142, inscripción tercera, es nula por haber sido otorgada en violación de ley, y al concluir que la parte demandante-apelante no es tercero registral y ordenar la cancelación de la hipoteca al Registrador de la Propiedad de Carolina II.

El 26 de marzo de 2002, las partes estipularon la exposición narrativa de la prueba. Para el 13 de mayo de 2002, la parte demandante-apelante, Daniel González Quijano, envió su alegato suplementario. El 27 de junio de 2002, la parte demandada-apelada, Pacheco Aiméstica, presentó su alegato en oposición. Por lo tanto, con el beneficio de la exposición estipulada de la prueba, así como de la comparecencia de las partes, nos encontramos en posición de resolver.

## II
### A. La hipoteca y las inexactitudes de los asientos registrales

La hipoteca es una garantía de naturaleza real, que se caracteriza por su accesoriedad y por su función aseguradora de una deuda en dinero. *Vázquez Santiago v. Registrador*, 137 D.P.R. 384, 388 (1994). El derecho

de hipoteca es de carácter constitutivo. Ello implica que para que la garantía real de la hipoteca quede válidamente constituida, se requiere que ésta se haya acordado en escritura pública y conste inscrita en el Registro de la Propiedad. *Id.; Rosario Pérez v. Registrador,* 115 D.P.R. 491, 493 (1984); *S.J. Credit, Inc. v. Ramírez,* 113 D.P.R. 181, 188-189 (1982). Este principio está contenido en el Artículo 1774 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5041, el cual dispone que para que la hipoteca quede válidamente constituida es indispensable que el documento en el que la garantía se constituye sea inscrito en el Registro de la Propiedad. Este principio se encuentra plasmado también en el Artículo 188 de la Ley Hipotecaria de 1979, 30 L.P.R.A. sec. 2607, que al respecto dispone lo siguiente:

*"§2607. –Requisitos para su constitución*

*Para que las hipotecas voluntarias queden válidamente constituidas se requiere:*

*Primero: Que se hayan acordado en escritura pública.*

*Segundo: Que la escritura se haya inscrito en el Registro de la Propiedad."*

El proceso de inscripción comienza con el asiento de presentación. Este asiento sólo tendrá validez si el Registrador de la Propiedad finalmente inscribe la hipoteca. La inscripción registral de la hipoteca representa el acto constitutivo mediante el cual la garantía que la hipoteca representa produce efectos reales y adviene eficaz frente a terceros (*erga omnes*). *Vázquez Santiago v. Registrador, supra,* a las págs. 388-389; *Rosario v. Registrador, supra,* a la pág. 494.

Previo a la inscripción, el Registrador de la Propiedad ejerce su función calificadora. Dicha facultad calificadora es impuesta por el principio hipotecario de legalidad, el cual requiere que los títulos que pretendan ser inscritos en el Registro de la Propiedad sean sometidos a un examen previo, con el fin de que a los libros hipotecarios sólo tengan acceso los títulos válidos y perfectos. *Cintrón Ramos v. Registrador,* 144 D.P.R. 91, 100 (1997). Véase también, *L. Dershowits & Co., Inc. v. Registrador,* 105 D.P.R. 267, 273 (1976).

Por tanto, un derecho que es presentado para su inscripción puede adolecer de faltas o defectos de forma que posteriormente eviten su inscripción. Una vez presentado y verificado el asiento de presentación, el Registrador realiza un juicio crítico de naturaleza jurídica que produce una resolución. Esta resolución puede ser la práctica, denegación o suspensión del asiento solicitado. Sin embargo, puede darse el caso en el cual un instrumento público haya tenido acceso al registro y que el asiento en el cual se constituyó sea uno inexacto. Un asiento inexacto es aquél que expresa un desacuerdo de derechos inscribibles entre el asiento y la realidad jurídica extraregistral. Artículo 110 de la Ley Hipotecaria, *supra* sec. 2360. A tenor con el Artículo 68 de la Ley Hipotecaria, *id.* sec. 2271, las faltas que impiden la registración de un título son las siguientes:

*"§2607. –Faltas que impiden la registración*

*Serán faltas que impidan la registración del título presentado:*

*(1) Las que causan la inexistencia del acto o contrato a registrarse o la anulabilidad de éste o del documento presentado.*

*(2) Las que se originen de obstáculos del Registro.*

*(3) Las que se funden en disposiciones de este subtítulo.*

*(4) El no presentar los documentos complementarios necesarios o no acreditarse el cumplimiento de las*

*formalidades exigidas por las leyes.* " [Enfasis Suplido.]

La clasificación hecha por el registrador de los documentos presentados será a ·los ·únicos efectos de extender o denegar la inscripción, anotación, nota o cancelación solicitada, la cual no impedirá o prejuzgará el juicio que pueda seguirse en los tribunales sobre la validez de los documentos calificados. El registrador deberá atenerse a lo que el tribunal resuelva. Artículo 67 de la Ley Hipotecaria de 1979, *id.* sec. 2270.

El Artículo 100 de la Ley Hipotecaria, *id.* sec. 2321, establece que los asientos practicados en el Registro se entenderán defectuosos si en ellos se omite, o se expresa con inexactitud sustancial, alguna de las circunstancias exigidas por este subtítulo sin perjuicio de lo establecido en los Artículos 150 a 154, *id.* secs. 2501 a 2505, sobre rectificación de errores. Por eso se ha entendido que las faltas que impiden la registración de un título presentado al Registro son todas aquéllas que causen la inexistencia del acto o contrato a registrarse, o la nulidad o anulabilidad de éste o del documento presentado y las que se originen de obstáculos del Registro. Artículo 68 (1)(2) de la Ley Hipotecaria, *id.* sec. 2271 (1)(2).

Por su parte, el Artículo 110 de la Ley Hipotecaria, *id.* sec. 2360, establece lo siguiente respecto a las inexactitudes del registro:

"*§ 2360. Inexactitudes en el Registro; definición; rectificación.*

...
*La rectificación del Registro podrá ser solicitada por el titular del dominio o derecho real que no esté inscrito, que lo esté erróneamente, o que resulte lesionado por el asiento inexacto.*

*La rectificación se practicará con arreglo a las normas siguientes:*

*(a) Cuando la inexactitud proviniere de no haber tenido acceso al Registro alguna relación jurídica inmobiliaria, la rectificación tendrá lugar: primero, por la inscripción del título procedente, si ello fuere posible; segundo, por reanudación del tracto sucesivo, conforme a lo dispuesto en este subtítulo y tercero, por resolución judicial que la ordene.*

*(b) Cuando la inexactitud deba su origen a la extinción de algún derecho inscrito o anotado, la rectificación se hará mediante la correspondiente cancelación, efectuada con arreglo a las disposiciones de este subtítulo.*

*(c) Cuando la inexactitud tuviere lugar por defecto o error de algún asiento, se rectificará el Registro según lo establecido en este subtítulo.*

*(d) Cuando la inexactitud procediere de la falsedad, nulidad o defecto del título que hubiere motivado el asiento y, en general de cualquiera otra causa no especificada anteriormente, la rectificación precisará el consentimiento del titular afectado por ella o, a falta del mismo, una resolución judicial.*

*En los casos en que haya de solicitarse judicialmente la rectificación, deberá dirigirse la demanda contra todos aquéllos a quienes el asiento que se trata de rectificar conceda algún derecho.*

*La acción de rectificación será inseparable del dominio o derecho real de que se deriva.*

*En ningún caso, la rectificación del Registro perjudicará los derechos legítimamente adquiridos por tercero que reúna las condiciones fijadas en este subtítulo.*" [Enfasis Suplido.]

Además, el Artículo 1177 del Código Civil, *supra*, sec. 3273, establece que la escritura defectuosa, por incompetencia del notario o por otra falta en la forma, tendrá el concepto de documento privado, si estuviese firmada por los otorgantes. Esto es lo que se conoce como la teoría de la conversión. Es necesario que tengamos presente que una cosa es la validez del negocio jurídico y otra cosa es la validez del instrumento público donde se recoge formalmente dicho negocio: la escritura. *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 838 (1979).

## B. El tercero registral y sus requisitos

Nuestro ordenamiento jurídico inmobiliario, integra el requisito de la fe pública registral, de modo que queden protegidos los derecho de terceros que por negocio jurídico válido adquieran confiando en el contenido del Registro de la Propiedad. *Banco de Santander v. Rosario Cirino*, 126 D.P.R. 591, 601 (1990). El Artículo 105 de la Ley Hipotecaria, *supra*, sec. 2355, enuncia qué es lo que se entiende por tercero registral:

"*§ 2355. Publicidad registral - No convalidación de actos o contratos nulos; protección de derechos de terceros.*

*A pesar que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos, el tercero que de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo será mantenido en su adquisición, una vez haya inscrito su derecho, cuando por cualquier razón resulte inexacto el Registro, bien sea que se rescinda, resuelva o anule el título del otorgante en virtud de causas que no resulten clara y expresamente del propio Registro, o que existan sobre la finca acciones o títulos de dominio o de otros derechos reales que no estén debidamente inscritos.*

*Al respecto, ha de entenderse por Registro los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en la sec. 2451 de este título, que se refieran a cargas y gravámenes o a derechos que no sean el que transfiere o grava, además del asiento que publica el derecho del trasmitente.*

*La buena fe del tercero se presume siempre mientras no se pruebe que al adquirir conocía la falta de exactitud del Registro.*

*El adquirente a título gratuito sólo gozará de la protección registral que corresponde a sus causantes o transferentes.*

*En ningún caso afectarán a tercero los derechos meramente mencionados o la indebida constancia de obligaciones.*" [Énfasis Suplido.]

Como puede observarse, el Artículo 105 de la Ley Hipotecaria *id.* le impone varios requisitos a quienes reclamen la protección del Registro de la Propiedad. Los requisitos son susceptibles de acuñarse en la máxima siguiente: deberá ser un tercero civil que de buena fe y a título oneroso, en un negocio intervivos válido, adquiera un derecho real inmobiliario inscrito de persona que en el Registro de la Propiedad aparezca con facultades para transmitirle, en función de un registro inexacto, sin que consten clara y expresamente las causas de la inexactitud ni concurra alguna de las excepciones a la aplicación de la fe pública registral y que, a su vez, haya inscrito su adquisición. *Banco de Santander v. Rosario Cirino, supra*, a las págs. 603-604. Examinemos estos requisitos en detalle.

Un tercero civil es aquél que no es parte en el contrato que ejercita derechos adquiridos de buena fe que están en conflicto con quienes intervinieron en el acto o contrato. *Id.*, a la pág. 604. No solamente hay que ser un tercero simple, sino que tiene que ser un tercero adquirente. *Id.*, a la pág. 605. Hay que destacar que el tercero hipotecario no es perfecto sinónimo del tercero adquirente civil. Según el Tribunal Supremo, el tercero

hipotecario es *"un tercer adquirente por negocio jurídico de un derecho real inmobiliario inscrito."* *Id.,* citando a R.M. Roca Sastre, Derecho Hipotecario, 7ᵐᵃ ed., Barcelona, Ed. Bosch, 1979, T. I, pág. 618.

La buena fe requerida por el Artículo 105 de la Ley Hipotecaria, *supra*, es de tipo subjetiva, psicológica e intelectiva. *Banco de Santander v. Rosario Cirino, supra,* a la pág. 605. La buena fe en materia registral se presume y para establecer lo contrario hay que probar que el tercero adquirente conoció indudablemente al adquirir, que las constancias del Registro eran inexactas. *Id.,* a la pág. 607.

El requisito a título oneroso lo que exige es que la adquisición se haya realizado mediante un negocio jurídico bilateral a través de contraprestaciones recíprocas. *Banco de Santander v. Rosario Cirino, id.,* a la pág. 607. Por otro lado, el negocio jurídico a realizarse entre las partes tiene que ser uno intervivos válido, es decir que el negocio de adquisición tiene que ser válido de acuerdo con el Código Civil. Debe cumplir con los requisitos de objeto, consentimiento, causa y capacidad de las partes. *Id.* También para que se cualifique como tercero registral, la persona debió adquirir en función de un registro inexacto. Como expresáramos anteriormente, un registro es inexacto cuando el mismo no está de acuerdo con la realidad jurídica extraregistral en cuanto al derecho que se quiere inscribir.

Otro de los requisitos para invocar el carácter de tercero registral es que en el Registro de la Propiedad no constaban clara y expresamente las causas de la inexactitud registral. Tampoco debe concurrir alguna de las excepciones a la aplicación de la fe pública registral. Finalmente se debe haber inscrito el derecho o título adquisitivo en el Registro de la Propiedad.

## III

La parte demandante-apelante, Daniel González Quijano, plantea en su único señalamiento de error que el Tribunal de Primera Instancia se equivocó al concluir que la hipoteca número 7 otorgada el 3 de febrero de 1990, es nula por haber sido otorgada en violación de ley, y al concluir que la parte demandante-apelante, González Quijano, no es tercero registral y ordenar así la cancelación de la hipoteca. Dicho señalamiento de error no se cometió.

En el caso que nos ocupa, la garantía hipotecaria que solicita ejecutar Daniel González Quijano no fue válidamente constituida e inscrita en el Registro de la Propiedad de Carolina II, ya que para ello se requería el consentimiento y comparecencia del Secretario del Departamento de la Vivienda, según surge de la restricción contenida en la inscripción primera de la finca 43,989 al folio 169 tomo 1048, que consta en el Registro de la Propiedad. Por lo tanto, el Tribunal de Primera Instancia no puede ordenar la ejecución de una hipoteca nula que por equivocación logró acceso al Registro de la Propiedad. Sin embargo, lo expuesto anteriormente no significa que Daniel González Quijano, parte demandante-apelante, carezca de derecho alguno a solicitar el monto de lo que se le adeuda, ya que aunque no se pueda solicitar la ejecución de la hipoteca por no haber sido válidamente constituida, sí existe un negocio privado válido y exigible entre la parte demandante–apelante y Osvaldo Nieves Acevedo y su esposa. Además, también podría tener una causa de acción contra Juan Benítez Muñoz, de quien adquirió el pagaré mediante negociación y entrega.

La parte demandante-apelante, Daniel González Quijano, sostiene además que erró el foro de primera instancia al concluir que dicha parte no era un tercero registral. De un análisis de los requisitos necesarios para ser tercero registral es forzoso concluir que en este caso no concurren todos los elementos indispensables para que se de dicha figura. Según surge de la exposición narrativa de la prueba estipulada por ambas partes, Daniel González Quijano adquirió, mediante negociación y entrega de Juan Benítez Muñoz, un pagaré al portador con garantía hipotecaria, sin verificar las constancias del Registro de la Propiedad. Debido a ello, la garantía hipotecaria fue constituida sin el consentimiento del Secretario de la Vivienda, el cual, como indicamos anteriormente, era necesario en este caso en particular. Al respecto, argumenta la parte demandante-apelante, Daniel González Quijano, que la propiedad no estaba sujeta a dicha restricción, ya que la misma se había constituido en la escritura de hipoteca original, la cual había sido cancelada mediante nota marginal. Sin

embargo, olvida también la parte demandante-apelante, González Quijano, que dicha condición restrictiva también consta en la escritura de compraventa original, por lo cual el inmueble quedó sujeto a dicha restricción. Por lo tanto, la parte demandante-apelante, González Quijano, no puede invocar la protección que le concede al adquirente de buena fe el Artículo 105 de la Ley Hipotecaria, *supra*, pues la causa de nulidad e inexactitud de la inscripción registral de la hipoteca surgía claramente de las constancias del Registro de la Propiedad.

En conclusión, no erró el Tribunal de Primera Instancia al desestimar las causas de acción en cobro de dinero y ejecución de hipoteca presentadas por la parte demandante-apelante y ordenar al Registrador de la Propiedad de Carolina II la cancelación de la inscripción de la hipoteca constituida mediante la inscripción número 7, otorgada el 3 de febrero de 1990.

**IV**
Por los fundamentos anteriormente expuestos, se confirma la sentencia apelada.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General